### 24634.   DRAKE v. WAYNE, administrator.

DECIDED FEBRUARY 25, 1936.

*Paul Brown, Hamilton McWhorter, J. G. Faust,* for plaintiff in error.

*Dodd & Dodd, W. W. Armisted, Miles W. Lewis,* contra.

MacIntyre, J. Clarence Wayne, as administrator of the estate of William Kerr, brought an action in two counts against A. T. Drake. Drake filed his answer, and demurred to the petition. Wayne demurred to the answer. The court overruled the demurrer to the petition, sustained the demurrer to the answer, and rendered judgment against the defendant for $5,000 principal, and $2,710 interest. Drake excepted. The correctness of the ruling on the demurrer is the controlling factor in the case.

Paragraph 3 of count 1 of the petition avers that the "defendant is indebted to petitioner as such administrator in the sum of $5,000, besides interest (less a credit of $900 on account of interest) on a promissiory note dated November 1, 1922, reading as follows:

"5,000.                                    Philomath, Ga., 11/1/1922.

"On demand after date I promise to pay to the order of Wm. Kerr five thousand dollars, for value received, with interest from date at the rate of 6 per cent. per annum. And to secure the payment of said note I hereby mortgage and convey unto said payee, his heirs and assigns the following described property, to wit: . . It is understood and agreed that this note is not binding unless actually needed by said Wm. Kerr during his lifetime; but if needed, all property of A. T. Drake is responsible and note is binding, otherwise void. And for the consideration aforesaid I hereby waive all right to homestead and exemption of personalty as against this note, and agree to pay all costs of collecting the same, including ten per cent. of principal and interest as attorney's fees should I fail to pay this debt on or before the return day of the court to which suit is brought for the collection of the same after the holder . . has notified me in writing, ten days before suit is brought, of his intention to bring suit . . I also waive the benefit of the exemption of daily, weekly, or monthly wages from garnishment as against this obligation or any renewal of the same. Witness my hand and seal the year above written.

A. T. Drake (L. S.)"

Paragraph 4 of count 1 reads as follows: "That after said note was made the said William Kerr did need the money so loaned to defendant and did repeatedly demand of defendant payment thereof, but the defendant, though repeatedly promising to pay the same and though repeatedly acknowledging the

indebtedness and the actual need of the said Kerr for said money, has failed and refused to pay the same. The said note is now long past due and unpaid."

The following averments are made in count 2 of the petition: (3) "That said defendant is indebted to petitioner as such administrator in the sum of . . $5,000 principal debt, besides interest, on account of the facts hereinafter set forth." (4) "That on or about the first day of November, 1922, the said William Kerr had loaned to defendant the sum of five thousand dollars, with the understanding and agreement that defendant would annually pay interest at the rate of six per cent. per annum and would pay the principal on demand by said Kerr." (5) "That thereafter, defendant did pay interest on said sum from time to time, said interest payments aggregating the amount of $900." (6) "That [on specified dates ranging from October 17, 1928, to January 21, 1931] the said Kerr demanded payment of said indebtedness, and the defendant, on said dates, did in writing acknowledge said indebtedness to be just and due and did repeatedly promise to pay the same, such acknowledgments and promises being evidenced by his letters to said Kerr, copies of which are hereto attached." (7) "That said indebtedness is past due and unpaid, and petitioner has demanded payment thereof, and payment has been refused." The prayer is for a judgment "for principal, interest and costs due."

The letters referred to in paragraph 6 of the foregoing count are twelve in number, and some of them are quite long. We shall not cumber this case by quoting those letters in full. However, it may not be amiss to quote briefly from a few of them. The substance of the letter of January 24, 1931, is as follows: "According to my promise and your acceptance, I am trying to make good. I got my last dollar of insurance money to-day and am sending you the $100 as promised. If I ever make any money and you need it, you can get it. I trust times will be better, but it looks dark for some of us who are left stranded. My boy wants to, and ought to, go to school; but I am not making a living, and can't send him." We quote as follows from a letter dated January 21, 1931: "I made you a proposition last Thursday, and have not had a reply. Let me hear at once, as I am expecting the last of my life-insurance money this week

and want you to have your share if you will accept it on terms I mentioned. I see no chance to ever have any more money, as this whole country is more than broke. . . I will not send you another note, as the one you have is as good as I could give. If I am fortunate enough to make some money and you need part of it (all but my bread) you can get it. There is a claim forty years old against what I have, and I have not paid anything on account of having to pay *you* in years." We next quote from a letter dated January 15, 1931: "I have done my very best to keep you and others I owe satisfied . . , but I guess I should have done as every one else in my shape would have done, gone in bankruptcy. . . Now if you are willing to let me pay you $100 . . and wait until I make an effort to raise another crop to pay you some next fall, I will send it to you just as soon as I can get it from my insurance people. . . Your note is not worth much if you try to force a settlement. . . You shall never suffer if I can *help* it, if you will listen to me, as I am willing to make good my care for you so long as I can work." The following is quoted from a letter dated April 18, 1930: "Your letter to hand and contents noted. . . I am trying to borrow some money, and will know in a week or so whether I can get it or not. If I do will send you some. I simply can't do what I would if I had money like I did have before that crowd in Texas stole it. . . I will divide my last biscuit with you. Sorry your eyesight is failing you. It seems we all have troubles enough." In a letter dated May 5, 1930, to Mr. Kerr the defendant said: "Am sending you a hundred dollars . . Please hold this check until the latter part of this week. . . I have never seen anything like what we are going through. . . I am doing my very best, but will have to make it out of this crop before making you another payment. Sometimes I feel like giving up, but then that would be too childlike." In an undated letter the defendant wrote to Mr. Kerr: "I am sending you $100 . . I borrowed this money from my daughter . . I am doing the very best I can, although you may not think so." In a letter dated July 10, 1929, the defendant wrote to Mr. Kerr as follows: "I certainly meant to send you the $100 . . I am enclosing check, but am obliged to date it when I hope to have something to take care of it. . . I intend to divide the last dollar I can get my hands on that is mine, so long as you need it. . . You have been

good to me, and I could never see you suffer for anything so long as I can work and help it." From a letter of Nov. 13, 1928: "Yours to hand, and I spent almost a sleepless night on account of its contents. . . I am crowded on all sides, . . and have been advised to go into bankruptcy, which I will not do unless forced into it. . . If you will be patient and give me a chance, I will do just what I told you I would do, and will give you the best room in the house and divide the last biscuit with you." From a letter dated October 17, 1928: "Your letter to hand. I am sorry Callaway has had the misfortune to be forced in bankruptcy, if he was forced in. I am enclosing $300, which I hope will keep you going for a while. When you *actually* need more money, I am here to do what I told I would."

Answering paragraph 3 of count 1, the defendant "admits the execution and ownership of the note sued on, but denies any indebtedness thereon." Paragraph 4 of that count is denied. Referring to the stipulation in the note that: "It is understood and agreed that this note is not binding unless actually needed by said Wm. Kerr during his lifetime; but if needed, all property of A. T. Drake is responsible and note is binding, otherwise void," the defendant pleaded: "That, as clearly expressed in said stipulation, it was the distinct understanding between the maker and payee of said note that should the money represented by said note be needed for the personal use and benefit of . . Kerr during his lifetime, the note was and is binding; but . . that . . Kerr has died without having collected said note, or without having sought collection of same, and that the same can not now be collected by the administrator. The money represented by the said note . . was and is a conditional gift from said Kerr to this defendant, which could have been defeated by the said Kerr during his lifetime had he sought to enforce collection of the money for his own personal use; but upon the death of said Kerr the gift became absolute and fixed and irrevocable as far as the administrator of the estate of . . . Kerr is concerned. William Kerr was a traveling salesman who for many years visited the store of this defendant, and between said Kerr and this defendant existed a warm and lasting friendship. Many years ago, perhaps thirty, . . Kerr voluntarily offered and insisted that this defendant (who was then in partnership with his brother) accept and use $5000 or other sum

belonging to Kerr. The money was advanced by Kerr and used by the defendant and his brother, the note being renewed from time to time and interest being kept paid thereon. After the dissolution of the partnership between . . defendant and his brother, defendant retained the money, the said Kerr stating then that he never wanted the money to be paid unless it was for his own personal use while in life. This agreement and condition was put in the note when it was finally renewed on November 1, 1922, and became then, and is now, a binding and material part of the contract between the parties, and, as stated, fixed the rights of the parties, and operates as a gift to this defendant of said money that can not now be collected after the death of said . . Kerr."

Answering count 2, the defendant denied paragraphs 3, 4, 6, and 7, and, for lack of information, neither admitted nor denied paragraph 5. Further answering, the defendant set out fully a copy of the note declared on, and pleaded the same stipulation as it was pleaded in count 1. In count 2 the defendant pleaded the statute of limitations. The defendant demurred to count 1, because (1) "Said claim sets forth no cause of action." (2) "If any right of action exists, the same appears from the note sued on to have been a personal right in William Kerr, not surviving to his administrator." (3) "The note sued on shows on its face that it is a gift conditioned upon being defeated by the money being collected by . . Kerr during his lifetime; and such collection not being made, such gift became fixed in . . defendant." The defendant demurred to count 2, because: (1) It sets forth no cause of action. (2) It "does not show how the money was loaned, or if evidenced by any contract or condition, and does not put defendant in possession of sufficient facts to authorize him to sufficiently plead to said petition."

Was the money a gift? It was not a gift causa mortis, for such a gift "must be made by a person during his last illness or in peril of death." Code of 1933, § 48-201. But counsel for the plaintiff in error contend that "while this might legally be called an imperfect gift, to be revoked at any time before it is perfected if William Kerr actually needed the money, if . . Kerr died without actually needing the money the gift thereby became a perfect gift and vested in Drake." "A delivery of property subject to be reclaimed by the donor at any time prior to his death, or where full control

or power over the property or fund vests in the donee only after the death of the donor, does not constitute a valid gift inter vivos." 20 Cyc. 1211, § 2. A gift inter vivos "operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect." 20 Cyc. 1192. "To make a valid gift, there must be a present intention to give, and a complete renunciation of right, by the giver, over the thing given, without power of revocation, and a full delivery of possession as a gift, inter vivos." *Mims v. Ross*, 42 *Ga.* 121 (2). This ruling was quoted with approval and followed in *Clark* v. *Bridges*, 163 *Ga.* 542, 544 (136 S. E. 444). We do not think that the defendant can successfully rely on the theory that the money was a gift.

But whether the transaction be viewed as a gift or as a loan, the ultimate, controlling factor is the proper construction of the instrument—especially the following part of it: "It is understood and agreed that this note is not binding unless actually needed by said Wm. Kerr during his lifetime; but if needed, all property of A. T. Drake is responsible and note is binding; otherwise void." It is contended by counsel for the plaintiff in error that the phrase "actually needed . . during his lifetime" means that "Kerr should actually need money for his actual wants, in the sense to provide for his maintenance and support in the way that a man of his circumstances would expect," and the question whether actual need existed was for the jury and not Kerr or his administrator to decide. Counsel for the defendant in error say that the meaning of the note is that "Drake promised to pay when Kerr should demand it, and that Kerr should be the sole judge of when he actually needed the money, the word 'need' being used . . . in the sense of 'desire.'" The cardinal rule of construction is to ascertain the intention of the parties to the contract; and this intention is to be gathered from the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes one provision if it is susceptible of another which gives effect to all of its provisions. 6 R. C. L., 835, 837, §§ 225, 227. The following rules of construction are stated in the Code of 1933, § 20-704: . . "2. Words generally bear their usual and common signification . . 4. The construction which will uphold a contract in whole and in every

part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. 5. If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." "It has been laid down as elementary law that if two clauses of a contract are so totally repugnant to each other that they can not stand together, the first shall be received and the latter rejected." 6 R. C. L. 847, § 236. "Where two clauses are so repugnant that they can not stand together, the first will be retained and the second rejected, unless the inconsistency is so great as to void the instrument for uncertainty, and this rule is the more readily applied where the instrument is apparently carelessly drawn." 13 C. J. 535, § 497.

If it be concluded that the provision that "this note is not binding unless actually needed by . . Kerr," etc., means that the money is not payable unless necessary for the maintenance and support of Kerr, then the first paragraph providing that the money is payable on demand is destroyed. On the other hand, if the note is construed to mean that Kerr could get his money when he desired and demanded it, the subsequent provision as to the obligee's actually needing the money is not necessarily destroyed. In Cooper v. Olcott, 1 App. D. C. 123, 131, Olcott, with the consent of his partner, Cooper, "promised to pay Hendrick on behalf of the firm the money due to him at any time he should need it, even if they should have to sell stock to do it." The court said: "And it is argued that this shows only a conditional promise, and that it does not appear that the condition has been performed. For it does not appear that Hendrick has needed the money, or that stock has been sold to pay it. This is a mere trifling with words, that should have no place in a court of equity. The word 'need' here is evidently used in the sense of 'request'; and the sale of stock to meet the demand was no condition at all." Our view is that, under well-known rules of law, the phrase "actually needed" in the instrument under consideration means no more than "desired," and that Kerr had the right to have his money if he demanded it. Again, if the view should be taken that the clause stipulating that the money was payable on demand is totally repugnant to, and irreconcilable with, the later clause providing that "this note is not binding unless actually needed," etc., "the first shall be received

662

and the latter rejected." We agree with the following statement of counsel for the plaintiff in error: "The demurrers to petition and answers cover practically the same ground. The controlling issue in this case . . is the interpretation of the peculiar wording of the note." Our view is that this controlling issue must be determined adversely to the contentions of counsel for the plaintiff in error, and we hold that the court did not err in overruling the demurrers to the petition, in sustaining the demurrers to the answer, and entering judgment on the note.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*