74874. ALIMENTA PROCESSING CORPORATION v. SOUTH GEORGIA PECAN COMPANY.
(364 SE2d 84)

SOGNIER, Judge.

Alimenta Processing Corporation (Alimenta) brought suit to recover for water damage to peanuts stored by Alimenta in a cold stor-

age warehouse owned and operated by South Georgia Pecan Company (South Georgia), the complaint alleging both negligence and breach of contract. The trial court granted summary judgment in favor of South Georgia, and Alimenta appeals.

The record reveals that large quantities of peanuts were stored by appellant in appellee's warehouse, over 900,000 pounds of which sustained moisture damage from rainwater which penetrated the warehouse through the roof. The parties' rights and responsibilities in regard to the loss were governed by a written lease contract, the interpretation of which the trial court found was controlled by the Supreme Court's holding in *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27 (262 SE2d 794) (1980). We do not agree that *Tudexo Plumbing* is controlling here, and we therefore reverse.

In *Tuxedo Plumbing* the Supreme Court held that in the circumstances presented there, " 'where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.' " Id. at 28. We do not find that the evidence in this case demonstrates without conflict a mutually exculpatory agreement. Paragraph 7 of the lease agreement contains three distinct provisions. The first provides that appellant "shall keep its inventory and property insured against damages from all perils in such amounts as [appellant] shall deem necessary and adequate." The word "shall" as used in this context is mandatory, and thus appellant was required to insure its stored property. Had paragraph 7 ended here, we would agree with the trial court that *Tuxedo Plumbing* is controlling. However, because of the remaining portions of paragraph 7, we cannot agree with the trial court that the rule enunciated in *Tuxedo Plumbing* applies to a contract such as the one here, where a contrary intent is so obviously expressed. The court in *Tuxedo Plumbing*, supra at 28, adopted a rule which it acknowledged had been recognized by numerous authorities, and which was itself formulated to give effect to that construction of a contract between "reasonable businessmen" which is "sensible and reasonable." *Mayfair Fabrics v. Henley*, 234 A2d 503, 507 (3, 4) (N.J. 1967). It does the rule no justice to apply it in circumstances where its application fractures the meaning of an otherwise sensible agreement.

The second portion of paragraph 7 purports to release and indemnify appellee from liability for damage to appellant's stored property not covered by insurance, when the damage is due to external causes, provided that appellee's own failure to comply with contract provisions did not contribute to the damage. This bespeaks the intention of the parties to hold appellee liable for damage not covered by

appellant's insurance if appellee's actions or omissions *did* contribute to the damage. After all, had the parties contemplated that in the event of loss they would look solely to appellant's required property insurance in all circumstances, this portion of paragraph 7, as well as various other provisions in the lease (imposing a duty on appellee to maintain and repair the roof, provide safeguards against damage from condensation, and the like) would not have been necessary. "The cardinal rule of construction is to ascertain the intention of the parties to the contract; and this intention is to be gathered from the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes one provision if it is susceptible of another which gives effect to all of its provisions. [Cit.]" *Drake v. Wayne*, 52 Ga. App. 654, 660 (184 SE 339) (1936). See also OCGA § 13-2-2 (4). Construing the first and second portions of paragraph 7 so as to harmonize them, we find the agreement contemplated that appellant was required to purchase property insurance, and should loss or damage occur, the parties would look solely to the insurance so long as the loss or damage was not occasioned or contributed to by appellee's failure to carry out its contractual duties. However, should the insurance not cover the entire loss, if appellee caused or contributed to the loss or damage by breaching a contractually imposed duty, appellee may not escape liability. It follows that appellee is not entitled to judgment as a matter of law.

Moreover, the third portion of paragraph 7 may not be ignored. That provision requires appellee to provide and maintain both "general liability insurance *and* a warehouse legal liability insurance policy in form and substance acceptable to [appellant] . . ." (Emphasis supplied.) It is clear that "general liability insurance" does not cover the type of loss sustained here. However, we are unable to discern from the present record whether appellee's required "warehouse legal liability insurance" covers losses to appellant's property, as appellant argues, or merely protects appellee against liability from third parties, as argued by appellee (and if the latter, how it differs from "general liability insurance," since both are specifically required). An issue of fact remains in this regard, which is material, because if the "warehouse legal liability insurance" provided by appellee covers damage to appellant's property, it may be looked to by appellant even if it was the intent of the parties to look solely to insurance, as envisioned in *Tuxedo Plumbing*, supra. This issue may perhaps be resolved by looking at the policy actually purchased by appellee. Further, when this factual issue is decided, if the "warehouse legal liability insurance" is found to cover damage to appellant's property, an ambiguity exists in the lease agreement as to how the parties intended the risk to be allocated between the two required insurance policies which cover the loss.

Since appellee is not entitled to judgment as a matter of law, and issues of fact remain to be resolved, we reverse the trial court's grant of summary judgment to appellee. See generally *Bland v. Ussery*, 172 Ga. App. 131, 132 (322 SE2d 335) (1984).

*Judgment reversed. Birdsong, C. J., Deen, P. J., Carley, Pope, Benham, and Beasley, JJ., concur. McMurray, P. J., and Banke, P. J., dissent.*

McMURRAY, Presiding Judge, dissenting.

Provision 7 of the lease agreement provides: "TENANT shall keep its inventory and property insured against damages from all perils in such amounts as TENANT shall deem necessary and adequate. To the extent not covered by said insurance policy, TENANT does hereby release and indemnify LANDLORD from any and all damages that may occur to TENANT'S inventory and property on the leased premises due solely to external causes (other than insects, rodents, vermin, or damages from failure to maintain the temperature or humidity levels specified herein), and provided that LANDLORD'S failure to comply with the provisions of this contract did not contribute to such loss or damage. LANDLORD will provide and maintain general liability insurance and a warehouse legal liability insurance policy in form and substance acceptable to TENANT with limits acceptable to TENANT and naming TENANT as an additional insured thereunder. Certificates of such insurance shall be delivered to TENANT upon request."

In view of the provision requiring plaintiff to insure its inventory and property against damages "from all perils," I find the case of *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27 (262 SE2d 794), to be controlling. Thus, I would affirm the grant of defendant's motion for summary judgment.

The majority takes the position that *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, supra, is inapplicable because of a substantial difference in the language of the lease agreement. In this regard, the majority points to additional language in provision 7: (a) the language whereby plaintiff releases defendant from liability for damage to plaintiff's property to the extent not covered by insurance provided the damage is due to external causes only and defendant's failure to comply with the provisions of the lease agreement did not contribute to the damage and (b) the language requiring defendant to purchase insurance for the protection of plaintiff. I am not persuaded.

(a) Generally speaking, the release language does not conflict with the exculpatory insurance language in provision 7 — it complements it. It further demonstrates the parties' intention to look to the insurance for protection against loss. Insofar as the release language can be said to conflict with the exculpatory insurance requirement (by

reserving a right of action for damage to the extent plaintiff's property was not covered by insurance under certain circumstances), the exculpatory insurance language must control. In effect, the release language in provision 7 is no different from the hold harmless language set forth in provision 4.4 of the *Lie-Nielsen* contract.[1] Just as the hold harmless language gave way to the exculpatory insurance provision in *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, supra, so too must the release language give way to the exculpatory insurance language in the case sub judice.

(b) With regard to the requirement that defendant purchase insurance for the protection of plaintiff, it must be observed that defendant was not required to purchase property insurance for the protection of plaintiff's property and inventory. Rather, the insurance to be purchased by defendant was of other kinds (general *liability* insurance and warehouse *liability* insurance) and plaintiff was to be a named *insured* thereunder. It cannot be said, therefore, that this additional language contravenes the exculpatory intent of the lease agreement.

In my opinion, the evidence demonstrated without conflict a mutually exculpatory agreement. *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, supra. Accord *Island Villa Developers, Inc. v. Bonner Roofing &c. Co.*, 175 Ga. App. 713 (334 SE2d 41); *Pettus v. APC, Inc.*, 162 Ga. App. 804 (293 SE2d 65). Accordingly, I respectfully dissent.

DECIDED DECEMBER 3, 1987 —
REHEARING DENIED DECEMBER 15, 1987 —

*Gary W. Hatch, Donald A. Loft, W. G. Elliott*, for appellant.
*J. Converse Bright, Wade H. Coleman*, for appellee.

---

[1] This contractual language can be found in the opinion of the Court of Appeals, *Lie-Nielsen v. Tuxedo Plumbing &c. Co.*, 149 Ga. App. 502 (254 SE2d 729), which was reversed by the Supreme Court in *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, supra. In its opinion, the Court of Appeals determined that the hold harmless language controls and that the insurance provision had no effect upon liability. *Lie-Nielsen*, 149 Ga. App. 502, 503, supra. Reversing, the Supreme Court held that the insurance provision prevailed and that the parties could look only to the insurance to cover a loss.