A94A1753. GLAZER et al. v. CRESCENT WALLCOVERINGS, INC. et al.
(451 SE2d 509)

POPE, Chief Judge.

We granted this interlocutory appeal to address a question of first impression: Where a tenant and landlord agree in a commercial lease not to sue each other for fire damage covered by insurance, can other allegedly negligent parties sued by the tenant (or his insurer) for such damage nonetheless seek contribution from the landlord? The trial court answered this question in the positive and denied the landlord's motion for summary judgment. We disagree and reverse.

This case arises out of a fire in an office building. Plaintiffs, who are not parties to this appeal, are insurers of tenants who suffered property damage in the fire. Plaintiffs initially sued appellants Glazer and Emerik Properties Corporation (referred to collectively herein as "landlord"), alleging that landlord was negligent in the construction, maintenance and operation of the building. They also sued appellees Crescent Wallcoverings, Inc., GenCorp., Inc., and Square-D Company (referred to collectively herein as the "product defendants"),[1] alleging that the product defendants had each manufactured or supplied products used in the building which were defective and caused or contributed to the rapid spread of the fire. Landlord moved for summary judgment based on a "Waiver of Subrogation" clause in each tenant's lease which provided that the landlord and tenant waived the right to sue each other for property damage covered by insurance, regardless of whose negligence caused the damage. After landlord sent tenants an abusive litigation letter pursuant to OCGA § 51-7-80 et seq., tenants moved to voluntarily dismiss their claims against landlord. The

---

[1] Only Crescent Wallcoverings filed an appellee's brief, and landlord attached to its brief copies of the other two product defendants' dismissals of their claims against landlord. Parties cannot supplement the record through attachments to a brief, however, so we consider all three of the product defendants to be appellees. Fortunately, their status is not crucial to our analysis or to the outcome of the case.

trial court granted this motion over landlord's objection, and then dismissed landlord's motion for summary judgment as moot.

Plaintiffs' claims against the product defendants remained pending, of course, and in the meantime the product defendants had filed cross-claims for contribution against landlord. Landlord moved for summary judgment on the product defendants' claims for contribution, too. Landlord argued there could be no contribution because it could not be a joint tortfeasor with the product defendants as a matter of law, while the product defendants argued that their right to contribution should not be compromised by a lease agreement to which they were not a party. The trial court agreed with the product defendants and denied landlord's motion.

1. As a preliminary matter, we address the dissent's contention[2] that the "Waiver of Subrogation" clauses landlord relies upon are unenforceable under OCGA § 13-8-2 (b). In pertinent part, this Code section provides that an agreement relative to the construction or maintenance of a building which purports to indemnify the promisee for damages resulting from the promisee's negligence is unenforceable as a matter of public policy. However, our Supreme Court has recognized that parties to a building-related contract (such as a lease) can agree to look solely to insurance to cover their losses without violating this statute, and that an intent to do so is the "well-recognized meaning" of a "waiver of subrogation" clause. See *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980). Such an agreement does not violate the statute because it does not indemnify the promisee, but instead "shifts the risk of loss to the insurance company regardless of which party is at fault. [Cit.]" Id. at 29 (2).

The landlord and tenants in this case demonstrated their clear intent to look solely to insurance by inserting the following clause in their leases: "*Waivers of Subrogation.* Each of the parties hereto waives any and all rights of recovery against the other . . . , for loss or damage to such waiving party or its property . . . arising from any cause *insured against* under the standard form of fire insurance policy. . . ." (Latter emphasis supplied.) The dissent nonetheless suggests that the waiver of subrogation clauses are unenforceable because the leases did not also include a specific requirement that one or both parties obtain insurance. The Supreme Court in *Tuxedo Plumbing* and the Court of Appeals in subsequent cases inferred an intent to look solely to insurance from the inclusion of mandatory insurance provisions, regardless of whether the indemnification clauses in question mentioned insurance. See *Tuxedo Plumbing*, 245 Ga. at 28-29; *Terrace Shopping Center Joint Venture v. Oxford Group*, 192 Ga.

---

[2] The product defendants/appellees do not raise this contention.

App. 346 (384 SE2d 679) (1989); *McAbee Constr. Co. v. Ga. Kraft Co.*, 178 Ga. App. 496 (343 SE2d 513) (1986). This does not mean, however, that there can never be a clear intent to look solely to insurance in the absence of a mandatory insurance provision. As in any situation involving the construction of a contract, magic words are not required, and the goal of the court is to look for the intent of the parties. See *McAbee Constr.*, 178 Ga. App. at 498.

Unlike the cases cited above, the contractual waiver clauses in this case are explicitly labeled as "Waiver of Subrogation" clauses, clearly contemplate the existence of insurance, and *by their terms do not apply in the absence of insurance*. Thus, a mandatory insurance provision is unnecessary to show the parties' intent to look solely to the insurer.

*Central Warehouse &c. Corp. v. Nostalgia, Inc.*, 210 Ga. App. 15 (435 SE2d 230) (1993) is distinguishable, as the waiver clause in that case (which was not labeled "waiver of subrogation") applied to all damages from insur*able* rather than insur*ed* causes. Since the waiver clause in that case did not necessarily contemplate the purchase of insurance and did not by its terms limit its applicability to situations in which there was insurance, the absence of a mandatory insurance provision rendered the waiver unenforceable; but these circumstances are not present here. To the extent that language in *Central Warehouse* suggests an intent to shift the risk to the insurer can only be expressed by a separate mandatory insurance provision, see 210 Ga. App. at 16-17, that language is disapproved. The "Waiver of Subrogation" provisions in the leases at issue here are not indemnification clauses void under OCGA § 13-8-2 (b), and are therefore enforceable.

2. We now return to the primary issue in this case: Given the enforceability of the "Waiver of Subrogation" provisions agreed to by the tenants and landlord, do they preclude the product defendants from seeking contribution from landlord? The product defendants could have a right to contribution from landlord only if they are compelled to pay a liability for which they and landlord are equally bound. See *Klausman v. Klausman*, 186 Ga. App. 669, 670 (368 SE2d 185) (1988); OCGA § 23-2-71. In denying landlord's motion for summary judgment, the trial court relied on *Marchman & Sons v. Nelson*, 251 Ga. 475 (306 SE2d 290) (1983), in which the Supreme Court held that the parties' joint liability did not have to be actually established by a judgment for contribution to be possible, and that the plaintiff's voluntary dismissal with prejudice as a result of a settlement with some defendants did not preclude the settling defendants from suing the non-settling defendants for contribution. Unlike plaintiffs in this case, however, the plaintiff in *Marchman* had a viable cause of action against the non-settling defendants when the suit began; the only bar to adjudication of the non-settling defendants' joint liability was the

plaintiffs' dismissal of the case with prejudice.

Here, the tenants and landlord agreed not to sue each other before any loss occurred, so no cause of action by plaintiffs against landlord ever arose. Thus, this case is more analogous to cases in which we have held that a party who cannot be sued by a plaintiff due to spousal immunity or the exclusive remedy provision of the Workers' Compensation Act also cannot be brought in as a third-party defendant on a claim for contribution. See *Southern R. Co. v. Brewer*, 122 Ga. App. 292 (176 SE2d 665) (1970) (spousal immunity); *Central of Ga. R. Co. v. Lester*, 118 Ga. App. 794, 803 (2) (165 SE2d 587) (1968) (workers' compensation). The product defendants attempt to distinguish these cases on the grounds that spousal immunity and the exclusive remedy provision of the Workers' Compensation Act are both bars to liability which are based on public policy, while the landlord relies instead on a contractual provision. A review of these cases shows, however, that the extension of the immunity to third-party situations was based not on public policy, but instead on a conceptual reality: contribution may only be sought from a joint tortfeasor, so where a party could not have been a joint tortfeasor as a matter of law at any time after the cause of action arose, contribution is not possible. For the same reason, the product defendants' argument that the tenants and landlord could not waive their "right" to contribution by agreement is without merit; since the product defendants and landlord never were or could have been jointly liable to plaintiffs, the product defendants had no "right" to contribution to be waived.

If plaintiffs had not voluntarily dismissed their action against landlord, landlord's motion for summary judgment based on the "Waiver of Subrogation" clause should have been granted. See Division 1. And if that motion for summary judgment had been granted, the product defendants clearly would not have been able to pursue contribution from landlord. Cf. *Shackelford v. Green*, 180 Ga. App. 617 (349 SE2d 781) (1986), aff'd, 257 Ga. 9 (356 SE2d 27) (1987) (recognizing that grant of summary judgment to alleged joint tortfeasor precludes other alleged tortfeasors from seeking contribution). The fact that plaintiffs dismissed their claims before summary judgment for landlord could be granted cannot and does not change this result.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Andrews and Blackburn, JJ., concur. Beasley, P. J., Johnson, Smith, and Ruffin, JJ., dissent.*

BEASLEY, Presiding Judge, dissenting.

I concur in Division 1 of the majority opinion, as it is clear from the contract that the intention of the parties was only to shift the risk of loss to insurers of the respective parties, which shift was dependent

on the party's purchase of insurance coverage. This does not at all constitute an agreement to indemnify or hold harmless a potential tortfeasor for a possible future tort, which is against the public policy expressed in OCGA § 13-8-2 (b).

However, this agreement between the landlord and tenant does not affect the contribution rights of third parties under OCGA § 51-12-32. They gave no consideration for the relinquishment of such rights against a joint tortfeasor. They have a cause of action which is not barred by the contract of others. The contract does not eliminate the status of the landlord as a tortfeasor but rather only bars an action by the tenant for the tort; the tenant received consideration when it granted the landlord this benefit.

*Marchman & Sons v. Nelson*, 251 Ga. 475, 477 (306 SE2d 290) (1983), demands this result. As taught in that case, "Our statute recognizes the continuing existence of the right of contribution against a joint tortfeasor who has been released. It recognizes the existence of the right of contribution where there is no judgment at all in the underlying suit, and even where there is no underlying suit filed. Thus, the right of contribution arises out of, but exists separately from, the rights present in the underlying suit." (Footnote omitted.) The Supreme Court then held that the dismissal with prejudice of the underlying suit "is not a bar to an action for contribution by one joint tortfeasor against another joint tortfeasor." Id. at 478. It follows that where a tortfeasor is protected from legal liability by an agreement to seek damages only from the tortfeasor's insurer, so that there can be no judgment or even valid suit against the tortfeasor, the joint tortfeasor is not precluded from contribution. The latter's statutory right is not cut off by the landlord's separate contractual protection from assertion by the tenant of its right of action.

The result of the majority's opinion is that the joint tortfeasor will be liable for the damage, if any, caused by the landlord.

For this reason, I respectfully dissent.

SMITH, Judge, dissenting.

I respectfully dissent. I cannot agree with the majority's conclusion that this case is distinguished from *Marchman & Sons v. Nelson*, 251 Ga. 475 (306 SE2d 290) (1983), because here no valid cause of action ever arose for the plaintiffs against the landlord. In my view, although the tenants and the landlord agreed not to sue each other before the loss occurred, the lease provision creating that agreement was unenforceable as a matter of law. Therefore, no valid distinction exists between this case and *Marchman & Sons*; the plaintiffs had a valid cause of action against the landlord, and the landlord and the "product defendants" were joint tortfeasors amongst whom a right of contribution existed.

My conclusion that the lease provision is unenforceable is based upon OCGA § 13-8-2 (b), which for reasons of public policy prohibits in certain contracts any provision "purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee." The statute's prohibition has been held applicable to leases. *Borg-Warner Ins. Fin. Corp. v. Executive Park Ventures*, 198 Ga. App. 70, 71 (400 SE2d 340) (1990).

An exception exists when the intent of the parties is not to indemnify or hold harmless any party from liability for its sole negligence but to shift the risk of loss to an insurer. See *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27 (262 SE2d 794) (1980); *McAbee Constr. Co. v. Ga. Kraft Co.*, 178 Ga. App. 496 (343 SE2d 513) (1986). This exception, taken from a rule long recognized in other jurisdictions, was first set forth in Georgia in *Tuxedo Plumbing*. It applies " 'where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain. . . .' [Cits.]" *Tuxedo Plumbing*, supra at 28.

To come under this exception, therefore, the parties' intention to make insurance coverage part of the bargain must be clearly evinced in the lease. In every case in which Georgia appellate courts have held this exception applicable, the contract specifically required one or both of the parties to purchase insurance coverage. See, e.g., *Tuxedo Plumbing*, supra; *Vasche v. Habersham Marina*, 209 Ga. App. 263, 264-265 (1) (433 SE2d 671) (1993); *Whipper v. McLendon Movers*, 188 Ga. App. 249 (1) (372 SE2d 820) (1988); *McAbee Constr. Co.*, supra; *Island Villa Dev. v. Bonner Roofing &c. Co.*, 175 Ga. App. 713 (334 SE2d 41) (1985). Moreover, in all the foreign authorities relied upon in *Tuxedo Plumbing*, from which the Georgia rule creating the exception was first taken, the contracts explicitly mandated insurance coverage. Id. at 28-29.

Although I agree with the majority that no "magic words" should be required, the crucial inquiry is whether the parties have made sufficiently clear their intent to shift the risk to an insurance carrier so as to invoke the exception to OCGA § 13-8-2 (b), by requiring insurance coverage. It is not this court's function to assume such intent; when a mandatory insurance provision is absent from the contract, we may not and should not presume that the parties intended nonetheless that insurance must be provided. *Central Warehouse &c. Corp. v. Nostalgia, Inc.*, 210 Ga. App. 15, 16-17 (1) (435 SE2d 230) (1993). This is not a blind insistence upon "magic words."

In this case, an insurance requirement could have been inserted in the lease easily. Despite the landlord's assertion to the contrary, however, such a provision is absent. Consequently, in my view, it is

clear that the exception created in *Tuxedo Plumbing* does not apply. It follows, therefore, that here, as in *Central Warehouse*, supra, the exculpatory clause in the lease violates the public policy codified in OCGA § 13-8-2 (b); it is void and unenforceable as a matter of law.

Because no contractual prohibition against it existed, the plaintiffs did have a valid claim against the landlord, and the landlord and the "product defendants" are joint tortfeasors. *Marchman & Sons*, supra, teaches that plaintiffs' claim need not have been reduced to judgment and that the release does not affect the contribution rights among joint tortfeasors. As a result, it appears to me that the trial court's denial of the landlord's motion for summary judgment against the "product defendants" was eminently correct. I would affirm the judgment.

I am authorized to state that Judge Johnson and Judge Ruffin join in this dissent.

DECIDED DECEMBER 5, 1994.

*Long, Weinberg, Ansley & Wheeler, M. Diane Owens, Margie M. Eget,* for appellants.

*Drew, Eckl & Farnham, Clayton H. Farnham, M. Reid Acree, Jr., Todd A. Schweber, Mozley, Finlayson & Loggins, William D. Harrison, Bennett, Callahan & Schloegel, Michael T. Bennett,* for appellees.