A94A2583. SOUTHERN TRUST INSURANCE COMPANY v. CENTER DEVELOPERS, INC. et al.
A94A2584. MAY DEPARTMENT STORE et al. v. CENTER DEVELOPERS, INC. et al.
A94A2585. HARTFORD ACCIDENT & INDEMNITY COMPANY v. CENTER DEVELOPERS, INC. et al.
A94A2586. ALLSTATE INSURANCE COMPANY v. CENTER DEVELOPERS, INC. et al.
A94A2587. NATIONWIDE MUTUAL INSURANCE COMPANY v. CENTER DEVELOPERS, INC. et al.
A94A2588. JEWELERS MUTUAL INSURANCE COMPANY v. CENTER DEVELOPERS, INC. et al.
A94A2589. ASSOCIATION OF APRIL MARCUS v. LOTZ et al.
A94A2590. HARTFORD ACCIDENT & INDEMNITY COMPANY v. CENTER DEVELOPERS, INC. et al.
A94A2591. HOME INSURANCE COMPANY v. CENTER DEVELOPERS, INC. et al.
(456 SE2d 608)

McMURRAY, Presiding Judge.

These nine companion cases arise out of suits by a tenant, Association of April Marcus d/b/a Men's Wear Outlet (Case No.

A94A2589), by the owner of a tenant, May Department Store (Case No. A94A2584), or else by the subrogated insurer of a tenant (collectively "plaintiffs"), against the owner of commercial premises, defendant Promenade Associates, Ltd. ("Promenade"), defendant Charles A. Lotz, Jr., who is the "General Partner of Promenade," and against Promenade's property management company, defendant Center Developers, Inc. ("Center"). Also named in each case was Belco Electric, Inc. ("Belco"), while in four cases, Henry Sign Systems, Inc. ("Henry") also was named. The complaints alleged, inter alia, that the tenants' premises and contents were damaged by two fires at the Loehmann's Plaza Shopping Center in Smyrna, Georgia, and that the fires were caused by the negligence of defendants or their agents in maintaining faulty neon signs in violation of applicable electrical codes. Each insurer also alleges that it has paid its insured's claim for property damage and business interruption losses incurred as a result of fire and has become subrogated to the rights of the tenant to the extent of payment. In Case No. A94A2583, Southern Trust Insurance Company is the subrogee of the tenant, Argus, Inc. In Case No. A94A2584, May Department Store is "the owner of [the tenant], Loehmann's, Inc. . . . ." In Case No. A94A2585, Hartford Accident & Indemnity Company is the subrogee of the tenant, Hair, Inc. In Case No. A94A2586, Allstate Insurance Company is the subrogee of the tenant, Natalie's Bags 'N' Things, Inc. In Case No. A94A2587, Nationwide Insurance Company is the subrogee of the tenant, Bennie's Shoes. In Case No. A94A2588, Jewelers Mutual Insurance Company is the subrogee of the tenant, Kid's World, Inc. d/b/a Plaza Diamonds. In Case No. A94A2590, Hartford Accident & Indemnity Company is the subrogee of the tenant, The Finish Line, Inc. In Case No. A94A2591, the Home Insurance Company is the subrogee of the tenant, Factory Outlet Shoes of Oklahoma, Inc.

Defendants denied the material allegations. After discovery, defendants Promenade, Center, and (in Case No. A94A2589) Charles A. Lotz, Jr., moved for summary judgment on the basis of provisions in the respective leases by which each tenant had expressly waived any claim of subrogation and had agreed with Center to hold each other harmless to the extent permitted by their respective fire insurance policies. The trial court granted these motions and these appeals followed. At the request of the parties, the nine separate appeals are consolidated for disposition in this single opinion. *Held:*

*Case Nos. A94A2585, A94A2586, A94A2587, A94A2588, A94A2589 and A94A2591*

1. Plaintiffs in these six cases enumerate the grant of summary judgment as error, arguing first that "the operative provisions of the

lease agreements do not bar subrogation because none of the leases required the tenants to purchase first-party property insurance." Relying on *Central Warehouse & Dev. Corp. v. Nostalgia, Inc.*, 210 Ga. App. 15 (435 SE2d 230), plaintiffs argue that a contractual requirement that either party purchase first-party property insurance is essential to a valid effort to shift the risk of any casualty loss to an insurance carrier. Consequently, it is urged that the waiver-of-subrogation clauses in these cases are void as contrary to public policy pursuant to OCGA § 13-8-2 (b).

In each of these six appeals, the tenant's lease contains the identical Article XXI, captioned: "WAIVERS OF SUBROGATION[: . . .] Each of the parties hereto waives any and all rights of recovery against the other or against any other tenant or occupant of the building or the Shopping Center, or against the officers, employees, agents, representatives, invitees, customers and business visitors of such other party or of such other tenant or occupant of the building or the Shopping Center, for loss of or damage to such waiving party or its property or the property of others under its control arising from any cause insured against under the standard form of fire insurance policy with all permissible extensions and endorsements covering additional perils or under any other policy of insurance carried by such waiving party in lieu thereof. Such waivers shall be effective only so long as the same is permitted by each party's insurance carrier without the payment of additional premium."

OCGA § 13-8-2 (b) provides in pertinent part that an agreement (relative to a building) "purporting to indemnify or hold harmless the promisee against liability for damages arising out of . . . damage to property caused by or resulting from the sole negligence of the promisee, his agents, or employees, or indemnitee is against public policy and is void and unenforceable. . . ." Plaintiffs' contention that the "WAIVERS OF SUBROGATION" clauses in the six cases sub judice are void by operation of this Code section is controlled adversely to them by the recent whole court opinion in *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492, 493 (1) (451 SE2d 509), involving substantially identical contractual language. In *Glazer*, this court observed that "our Supreme Court has recognized that parties to a building-related contract (such as a lease) can agree to look solely to insurance to cover their [respective] losses without violating [OCGA § 13-8-2 (b)], and that an intent to do so is the 'well-recognized meaning' of a 'waiver of subrogation' clause. See *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980). Such an agreement does not violate the statute because it does not indemnify the promisee, but instead 'shifts the risk of loss to the insurance company regardless of which party is at fault. (Cit.)' [*Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 29 (2), supra.]" *Glazer v. Crescent*

*Wallcoverings*, 215 Ga. App. 492, 493 (1), supra. The whole court disapproved of certain language in *Central Warehouse & Dev. Corp. v. Nostalgia, Inc.*, 210 Ga. App. 15, 16 (1), supra, suggesting that an intent to shift the risk to the insurer could be expressed only by a separate mandatory insurance provision. In the six cases sub judice, the contractual waiver clauses "are explicitly labeled as 'Waiver[s] of Subrogation' clauses, clearly contemplate the existence of insurance, and *by their terms do not apply in the absence of insurance.* [Under such circumstances], a mandatory insurance provision is unnecessary to show the parties' intent to look solely to the insurer. . . . [It follows that in the cases sub judice, the] 'Waiver[s] of Subrogation' provisions in the [six] leases at issue here are not indemnification clauses void under OCGA § 13-8-2 (b), and are therefore [not] [un]enforceable." (Emphasis in original.) *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492, 493 (1), 494, supra.[1] "[S]ubrogation places the subrogee in the shoes of the subrogor. Consequently, the rights to which the subrogee succeeds are the same as, and no greater than, those of the subrogor; therefore, the subrogee's rights are subject to any limitations incident to them in the hands of the subrogor, and subject to any defenses that might have been urged against the subrogor. [Cits.]" *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 262 (2) (356 SE2d 877). In these six cases, since the tenants validly waived any subrogation claim for fire damage, the trial court correctly granted defendants' motions for summary judgment.

2. The second enumeration, regarding whether plaintiffs' insureds and defendants were co-insureds, has been considered and found to have been rendered moot with respect to these appeals. Inasmuch as the valid waiver of subrogation applies to the agents of the parties to the lease, the sixth enumeration is found to be without merit.

## Case No. A94A2584

3. In the fifth enumeration, it is contended that "any waiver of subrogation in [the Loehmann's, Inc.] lease had no effect upon a direct action filed against [defendants]."

This action was brought by May Department Store ("May"), seeking to collect for "uninsured losses [incurred] as a result of the [two fires] . . . ." at the premises leased by May's wholly-owned corporation, Loehmann's, Inc. The alleged subrogation claims in this case

---

[1] The two fires were caused by allegedly faulty neon signs. The repair and maintenance of these signs were the tenant's contractual responsibility. Consequently, the dissent errs when it assumes that the failure of the landlord to perform gratuitously the tenant's contractual responsibilities for repair and maintenance is *any evidence* of " 'the willful act or gross neglect of [the] landlord,' " as used in the "loss and damage" clause.

are brought in the names of two additional plaintiffs, namely "Michael Maughan, an underwriter at Lloyd's Syndicate . . . [, representing] an unincorporated group of alien individual underwriters . . . ," hereinafter the "Interested Underwriters"; and "David Duberry, an underwriter at Hull Maritime Insurance Company for himself and other underwriters at the Institute of London Underwriters . . . ," hereinafter "the London Institute." It appears that Center, Belco, and Henry are the only defendants named and served in this action, although pleadings are filed in the names of both Center and Promenade.

Article XI, Section 11.3 of the Loehmann's, Inc. lease contained in part the following provision:

"WAIVER OF SUBROGATION . . . Landlord and Tenant agree that in the event the Demised Premises or its contents are damaged or destroyed by fire or any other cause recoverable by insurance maintained by either, the rights of either against the other with respect to such damage or destruction are hereby waived and released." Section 11.1 obliged the landlord to maintain at all times fire insurance as to the improvements. "Any such policy shall name Tenant as an insured. . . ." Also, Section 11.2 required the landlord to maintain "general public liability insurance . . . [issued] under a 'blanket policy,' so-called, . . . [which] shall not be cancelled or changed without at least ten (10) days' prior written notice to Tenant." The trial court characterized "Plaintiff/insurer [sic] May Department Store's [claim as a] subrogation action [and held that such claim was] barred . . ." by the above-quoted waiver of subrogation provision and on the alternative ground that May and defendants are co-insureds. See *E. C. Long, Inc. v. Brennan's of Atlanta*, 148 Ga. App. 796, 797 (1), 803 (252 SE2d 642).

Under the analysis of *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492, 493 (1), supra, the trial court's grant of summary judgment with respect to subrogation claims would be correct, but this ruling would apply only to the Interested Underwriters and the London Institute, both non-parties to this appeal. A waiver-of-subrogation analysis is not germane to the May claims for allegedly uninsured losses as stated in the complaint. The trial court's grant of summary judgment as to May cannot be sustained on this ground. Moreover, although May or Loehmann's, Inc. is supposed to be a co-insured under a policy of fire insurance defendants were contractually responsible for maintaining, "we are unable to discern from the present record whether [defendants'] required ['fire] insurance' covers losses to [May's] property. . . ." *Alimenta Processing Corp. v. South Ga. Pecan Co.*, 185 Ga. App. 330, 332 (364 SE2d 84). Accordingly, the record in the case sub judice does not establish the non-viability of May's direct claim against defendants and summary judgment was unautho-

rized. Other grounds of defendant Center's motion were not ruled upon by the trial court and will not be considered on appeal.

### Case Nos. A94A2583 and A94A2590

4. The leases entered into by Argus, Inc. (Case No. A94A2583) and also by The Finish Line, Inc. (Case No. A94A2590) contained (in pertinent part) the following provisions:

"20. LIABILITY INDEMNITY INSURANCE . . . Landlord shall not be liable to Tenant or any other person for any damage . . . to . . . property by reason of the failure of Landlord to perform any of its covenants or agreements hereunder, nor for such damage . . . caused by reason of any defect in the Premises now or in the future existing, nor for any damage . . . caused by any present or future defect in the plumbing, wiring, or piping in any part of the Shopping Center . . . , or for any damage arising from acts or negligence of other tenants or occupants of the Shopping Center. Tenant agrees to indemnify and save harmless the Landlord from and against any and all loss, damage, claim, demand, liability or expense by reason of any damage . . . to property . . . which may be claimed to have arisen as a result of or in connection with the occupancy or use of said Premises by Tenant. *Tenant shall, at its expense, provide and maintain in force during the entire lease term public liability insurance with limits of coverage of not less than $50,000.00 for property damage loss from any one accident . . . , and each policy of such insurance shall name as the insured thereunder the Landlord and the Tenant. . . .*" (Emphasis supplied.) Paragraph 21 is captioned: "INSURED'S WAIVER, NOTICE . . . Any insurance procured by Tenant as herein required shall be issued in the name of Landlord and Tenant . . . [pursuant to a policy which], at Landlord's option, waives its [the insurer's] right to subrogation against Landlord for any reason whatsoever."

The trial court concluded that, since the parties to these leases mutually agreed that insurance will be provided as part of the bargain, the result was a mutual exculpation and a waiver of subrogation binding upon Southern Trust Insurance Company and The Hartford Accident & Indemnity Company as subrogees. The trial court further held that these provisions made the landlord a co-insured with the tenant, also barring any subrogation claim. Plaintiff insurers argue that these conclusions fail to recognize "the distinction between coverage under a liability policy and coverage under a property insurance policy. . . ." We agree.

Liability insurance is defined as "insurance against legal liability for the death, injury, or disability of any human being, or for damage to property. . . ." OCGA § 33-7-3 (1). By way of contrast, "Property

insurance is insurance on real or personal property of every kind and interest therein against loss or damage from any or all hazards or causes and against loss consequential upon such loss or damage other than noncontractual legal liability for any such loss or damage." OCGA § 33-7-6 (a). In the cases sub judice, the agreement that the tenant was financially responsible for obtaining public liability insurance to hold the landlord harmless is to protect the landlord from the "noncontractual legal liability" claims of invitees or other third parties. This is not evidence that the landlord and tenant have agreed to exculpate each other and look solely to insurance in the event of casualty to personal property such as the destruction of inventory and fixtures by fire, with consequential business losses. The trial court erred in concluding that a contractual requirement that a tenant maintain in force a public liability insurance policy with the landlord (or its agents) as a named insured amounted to a mutual exculpation of the parties to the lease for fire damage to the tenant's inventory and contents of the leased premises. Moreover, the contractual language in these two leases (unlike that considered in Division 1, supra) does not purport to be an express waiver of subrogation for damage to the tenant's property. Rather, the lease requires only that such public liability policy as the tenant is contractually obligated to obtain shall *include* a provision whereby "at Landlord's option, [the insurance company] waives its right to subrogation against Landlord for any reason whatsoever." Accordingly, "the instant lease provision does not clearly and unequivocally express the mutual intent of [plaintiffs' insureds and defendants] to waive, as against each other, liability for the consequences of their own respective negligent acts or omissions. See generally *Hall v. Skate Escape, Ltd.*, 171 Ga. App. 178 (319 SE2d 67) (1984)." *Borg-Warner Ins. Finance Corp. v. Executive Park Ventures*, 198 Ga. App. 70 (400 SE2d 340). The trial court erred in granting summary judgment against plaintiff insurers Southern Trust Insurance Company and The Hartford Accident & Indemnity Company for their respective subrogated claims for fire damage and alleged consequential business losses.

5. In Case Nos. A94A2585, A94A2586, A94A2587, A94A2588, A94A2589 and A94A2591, the grant of summary judgment on the basis of a valid waiver of subrogation for fire damage to the tenant's property is affirmed. In Case Nos. A94A2583, A94A2584 and A94A2590, the grant of summary judgment on that same ground is reversed.

*Judgment affirmed in Case Nos. A94A2585, A94A2586, A94A2587, A94A2588, A94A2589 and A94A2591. Judgment reversed in Case Nos. A94A2583, A94A2584 and A94A2590. Birdsong, P. J., Pope, P. J., Blackburn and Ruffin, JJ., concur. Beasley, C. J., Pope, P. J., Andrews, Johnson and Ruffin, JJ., concur specially. Smith, J.,*

*concurs specially in part and dissents in part.*

BEASLEY, Chief Judge, concurring specially.

I concur in the majority opinion except that it does not expressly rule on the question addressed in Division 3 (c) of the dissent. Applying the principles of contract interpretation cited in the dissent and other applicable rules of construction including others contained in OCGA § 13-2-2, there is no conflict in the leases identified such that summary judgment was improper.

Reading the loss and damage provision together with the waivers of subrogation provision in the Men's Wear lease reveals that the parties intended the waivers to be effective only to the extent of insurance. Landlord remained liable for its own negligence or that of its employees, agents, or assigns, to the extent it was not covered by insurance. By inserting the typed exception, the parties were merely explicitly recognizing the public policy expressed in OCGA § 13-8-2 (b) which, as construed by the Supreme Court in *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980), allows the shifting of the risk of loss to the insurance company. The risk remains the landlord's to the extent it is not cast upon the insurer, which is being paid a premium to carry it. Where the loss from negligence exceeds the amount of coverage, the landlord does not, and cannot, avoid it by contract with the tenant. An attempt to do so would violate OCGA § 13-8-2 (b), which prohibition the parties expressly honored.

The typed additional language in the Shoe Secrets lease has the same effect; the parties just stated it differently. The printed all-encompassing loss and damage provision is limited by the typed exception which states that the landlord is not relieved of liability for its negligent acts. Reference is then immediately made to the rider containing a waiver of subrogation provision, which protects tenant from any right of recovery of the landlord subrogated to the landlord's insurer for losses caused by the tenant. The standard printed "waivers of subrogation" provision waives the rights of recovery of the parties, and by implication the subrogated insurers, to the extent of insurance coverage. Reading all of this together, it is plain that the landlord's liability for negligence remains only to the extent not covered by insurance.

I am authorized to state that Presiding Judge Pope, Judge Andrews, Judge Johnson and Judge Ruffin join in this special concurrence.

SMITH, Judge, concurring specially in part and dissenting in part.

I concur in certain portions of the majority's judgment, but for different reasons. I respectfully dissent as to other portions of the ma-

jority opinion.

1. I agree with the majority's holding in Division 3, albeit for a different reason: *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492 (451 SE2d 509) (1994), is inapplicable to the May Company claim; and summary judgment was therefore inappropriate as to the May Company.

The "loss and damage" clause in the May Company lease provides that "subject to the provisions of Section 11.3 [the 'waiver of subrogation' clause], tenant covenants and agrees that all personal property of tenant . . . which is on the demised premises shall be so at tenant's sole risk (to the extent permitted by law), except for damage thereto resulting from landlord's negligence, wilful act or default under this lease." This clause shows an intent to hold the landlord *liable* for its own negligence, but makes the clause "subject to" the "waiver of subrogation" clause. This conflict also creates an issue of fact regarding the parties' intent, and that issue of fact makes a grant of summary judgment improper.

The majority also holds in Division 3, however, that the Interested Underwriters and the London Institute, the May Company's insurers, are non-parties to this appeal. Majority opinion at 218-219. Appellee *concedes* that this is incorrect, and I would hold that summary judgment was inappropriate as to them for the reasons stated above and in Division 3, infra.

2. I also agree with the majority's disposition of Case Nos. A94A2583 and A94A2590, dealing with the Argus and Finish Line leases. Summary judgment was improper in these cases because the trial court appears to have mistakenly inferred an intent to shift the risk of fire loss to insurance; it appears to have made that inference from the lease requirement that the tenants purchase liability insurance. It also appears from the record, however, that the trial court was under the same misapprehension as to most of the leases.

3. I dissent as to Division 1 of the majority opinion.

(a) OCGA § 13-8-2 (b) provides in pertinent part that, as a matter of public policy, any provision in an agreement relating to the construction or maintenance of a building that purports to indemnify the promisee for damages resulting from the promisee's sole negligence is unenforceable. However, it has long been the rule in Georgia that "'where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.' [Cits.]" *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (262 SE2d 794) (1980).

Until recently, cases interpreting OCGA § 13-8-2 (b), as applied

to leases, inferred the intent "to look solely to the insurance" only where the purchase of such insurance was required under a lease. In *Glazer*, a majority of this court held that an explicit "waiver of subrogation" clause will usually suffice to show such an intent. Although I dissented in *Glazer*, I recognize that the rationale in *Glazer* must be applied, if applicable, in this case. Despite the presence of "waiver of subrogation" clauses, it is apparent to me that several of the leases in this case not only do not evince an intent to look solely to insurance to cover certain losses, they fairly demonstrate the parties' intent to *limit* the application of the "waiver of subrogation" clause. For that reason, I cannot agree with the majority that any of these cases is controlled by the holding in *Glazer*.

(b) All of these leases have a "loss and damage" clause as well as a "waiver of subrogation" clause. In four leases, the form "loss and damage" clause is intact. Its language holds the landlord harmless from liability based on claims of the tenant for damage to the tenant's property, *including subrogation claims by the tenant's insurance carrier*, "unless such damage shall be caused by the willful act or gross neglect of landlord." (Emphasis supplied.) The language in these three leases appears to me to *except* damage caused by wilful acts or gross neglect of the landlord from the operation of the waiver of subrogation clause. A question of fact remains for jury determination whether the damages sought here were the result of such "gross neglect." I therefore cannot agree that summary judgment was appropriate.

(c) Certain other leases have typewritten phrases interlined into the form "loss and damage" clause. In the Mens Wear lease, for instance, typewritten language was inserted into the first sentence, so that it now reads: "Landlord shall not except through its own negligence or the negligence of its employees, agents or assigns, be liable for any damage to property of tenant or of others located on the premises. . . ." In the Shoe Secrets lease, a sentence was added at the end of the "loss and damage" clause. The sentence reads as follows: "The foregoing to the contrary notwithstanding, landlord shall not be relieved of liability in the event of loss or damage caused by the acts of negligence of the landlord. 8.02 (a) — See 6 on rider." Number 6 on the rider is an entirely new "waiver of subrogation" clause that appears to waive subrogation only as to the insurance the lease *requires* the tenant to purchase — i.e., liability insurance and plate glass insurance. These insertions create a conflict between the "loss and damage" clause and the form "waiver of subrogation" clauses, and that conflict undermines the inference that the parties intended to exculpate the landlord from liability for its own negligence and shift the risk of loss to insurance. We may not consider the form "waiver of subrogation" clauses in isolation; we must endeavor

to construe these leases as a whole, and we must give them construc-
tions that will honor all their parts and the intent of the parties.
OCGA § 13-2-2 (4); see *Alimenta Processing Corp. v. South Ga. Pe-
can Co.*, 185 Ga. App. 330 (364 SE2d 84) (1987). This is particularly
true in cases where typewritten provisions have been inserted into
form leases. In such cases, the typewritten provisions control over the
preprinted language. OCGA § 13-2-2 (7); *Ft. Oglethorpe Assoc. v.
Hails Constr. Co.*, 196 Ga. App. 663, 664 (2) (396 SE2d 585) (1990). In
these cases, it is *at least* true that a genuine issue of material fact
exists regarding whether the form "waiver of subrogation" clause was
intended to control, or whether the typewritten provisions holding the
landlord *liable* for its own negligence was intended to limit the waiver
of subrogation for claims involving the landlord's negligence. In my
view, summary judgment was therefore inappropriate as to these
leases as well.

DECIDED FEBRUARY 28, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 —

*McPhail & Marmur, Jon B. McPhail, Sari B. Marmur,* for appel-
lants.

*Duncan & Mangiafico, George E. Duncan, Jr., Leslie P.
Becknell,* for appellees.