CAMP *v.* ÆTNA INSURANCE COMPANY.

No. 7203.   FEBRUARY 12, 1930.

49

*S. P. New,* for plaintiff.

*Spalding, MacDougald & Sibley,* for defendant.

RUSSELL, C. J. (After stating the foregoing facts.) Counsel

for both parties have argued at length a number of matters which we consider entirely immaterial to the issues before us. It is immaterial to rule upon the scope of the duties of a judge of the superior court in charging the grand jury or in expressing from the bench suggestions as to remedial legislation for the consideration of the General Assembly. The matters which are required by law to be submitted to the grand jury are stated in the Code. Aside from these, whether the occupant of the bench shall attempt to influence the action of any portion of the general public, either the membership of the General Assembly or others, is, in our opinion, a matter of taste and discretion entirely within the control of the presiding judge. We can not hold that the portion of the charge to the grand jury upon the subject of fire insurance legislation comes within the prescribed duties devolving upon a judge of the superior court or is within the category of instructions which a judge of the superior court is by law *required* to bring to the attention of the grand jury. And so the only real question in this case is whether the defendant had the right to cancel the policy of fire insurance protecting the personal property of the plaintiff. It appears from the express provision of the contract of insurance that the insured accepted and paid for the insurance he purchased with the provision which enabled the insurance company to cancel this policy at its own will and without reason, provided he was given five days notice of the intended cancellation and upon cancellation he was returned the pro rata portion of the premium paid by him. This is a petition in equity, and courts of equity stand open to afford redress of grievances and relief which courts of law are inadequate to supply. But in this case there is no allegation that the contract was entered into by reason of any fraud on the part of the defendant or that the plaintiff was fraudulently misled or overreached, and equity can not interfere to prevent the hardships which may devolve upon the plaintiff which were naturally and reasonably liable to occur upon a cancellation of the contract. Counsel for the plaintiff practically concedes this to be true. The stress of his argument is laid upon the ground of public policy, and the fact that the contract is one which is void by reason of the fact that it is contrary to public policy. A contract can not be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary

to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law. A contract of insurance is not one forbidden by law, and nothing stated in the petition shows that at the time the contract was executed there was an intention to violate the law on the part of either of the parties to this case. If both parties intended to violate the law, then the maxim that *in pari delicto potior est condilio defendentis* would prevail, because equity will not interfere in behalf of either party to an immoral or illegal contract entered by both parties with equal knowledge. The numerous cases cited by able counsel for the plaintiff do not controvert the proposition just stated. Indeed, in the oldest case cited by counsel, *Howell* v. *Fountain*, 3 *Ga.* 176 (46 Am. D. 415), Judge Nisbet, delivering the opinion of the court, said: "No court of law, or chancery, . . will lend its aid to enforce a contract made in violation of a treaty, immoral, indecent and wicked—and by the aid of an officer of the government, acting contrary to his official duties. . . The rule we lay down is this: So far as such contracts have been executed, the court will not disturb them, but leave the parties as we find them; and so far as they are not executed, will afford no aid whatever to enforce them. The rule is the same whether the illegality of the contract appears from the plaintiff's case, as here, or is set up by way of defense. . . If, from the plaintiff's own statement or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground that the court goes, not for the sake of the defendant, but because it will not lend its aid to such a plaintiff. So if the plaintiff and defendant should change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis.* So that, although there appears in this case to be an equity in favour of the complainant against the defendant, *that* can not avail him; we can help *him* in no event upon his illegal or immoral contract. We say to this complainant, as Chief Justice Wilmot said in Collins *vs.* Blantern, 2 Wils. 341, ' You shall not stipulate for iniquity, for no polluted hand shall touch the pure fountains of justice.' " The quotation from Chief Justice Wilmot, cited by learned counsel for

plaintiff in this case, is not in point, for the reason that the contract involved in this case can not be said to be contrary to public policy, because no agreement can be said to be contrary to public policy unless it is in some respect in violation of law; and so far as we are advised, a contract voluntarily entered into by one who is seeking fire insurance, stipulating that the insurer may, for any reason sufficient to himself, cancel the policy by returning the proportionate part of the premium, is not contrary to law.

The court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*

ATKINSON, J., concurring specially. A clause in a contract of insurance against loss or damage of property by fire, which provides that the contract "shall be canceled [by the insurer] at any time . . by giving five days notice of such cancellation," and returning unearned portions of the premium paid for the insurance, may, on complying with such conditions, be canceled by the insurer at its mere election, if exercised before loss or before a loss is imminent. See 26 C. J. 136, § 158. The motive for such cancellation is immaterial. International Life Ins. Co. *v.* Franklin Fire Ins. Co., 66 N. Y. 119. The insurer in such circumstances may cancel the contract of insurance for no other cause than a malicious motive to cause other insurance companies to cancel their contracts of insurance policies with the insured, and to cause acceleration of the maturity of an outstanding security deed on account of failure by the insured to carry insurance on the property covered by the contract of insurance, solely because of remarks of the insured criticising the business of insurance, such remarks not tending in any way to increase the risk of the insurer.

It is expressly stated in the order of the judge that no ruling was made on the special grounds of demurrer. The judge did not err in dismissing the action on general demurrer to the petition.

HINES, J., concurs in the foregoing special concurrence.