A94A2374. NATIONAL EMERGENCY SERVICES, INC.
v. WETHERBY.
(456 SE2d 639)

JOHNSON, Judge.

The issue in this case involves the construction of a provision of a contract between Dr. David Wetherby and National Emergency Services, Inc. (National), a staffing, placement business which supplies personnel to hospitals and other providers of emergency services.

It is undisputed that Wetherby entered into a contract with National to provide his services in health care facilities with which National contracted. National had such a contract with Memorial Hospital and Manor in Bainbridge, Georgia, the facility at which Wetherby was placed. Wetherby's employment contract with National contained a restrictive covenant barring him from working at Memorial for 24 months in the event the contract between National and that facility ended.

Wetherby continued to work at Memorial after it terminated its contract with National. National brought suit against Wetherby seeking to enforce the "liquidated damages" provision of the contract, which states: "Therefore, in addition to any and all remedies available to Corporation under any and all other agreements, and under this Agreement, physician agrees that he will immediately pay the sum of $25,000.00 to Corporation as and for liquidated damages if within twenty-four months following the termination of the Corporation's contract with said medical institution, physician should provide medical services for said institution if the physician had previously provided medical services for said institution pursuant to a contract with the Corporation."

Wetherby filed a motion for summary judgment asserting the restrictive covenant is unenforceable because it is overbroad in scope both as to time and geography and also because the liquidated dam-

ages provision is in fact a penalty. The trial court, without making specific findings of fact or conclusions of law, granted summary judgment in favor of Wetherby.

This court recently decided *Dominy v. Nat. Emergency Svcs.*, 215 Ga. App. 537 (451 SE2d 472) (1994), a case also involving a doctor's contract with National, which appears to raise identical issues.[1] We agree with the conclusion reached in Division 2 of that opinion which holds that a restrictive covenant, identical in all respects to the one in this case except for the amount of damages contemplated in the event of a default, is "reasonably limited in duration and territorial effect." Id.

We next analyze whether the remedy contemplated by the contract for a breach of that covenant is enforceable. Legal scholars examining this issue have suggested that, except in clear cases involving contracts of adhesion, liquidated damage provisions should not be subjected to stringent scrutiny as they provide viable economic alternatives to performance of contract and further represent a long-standing principle of freedom to contract.[2] Georgia courts, however, have adopted, and long adhered to, a tripartite test for determining whether a provision constitutes liquidated damages or an unenforceable penalty. The test has been applied in numerous cases. See, e.g., *AFLAC, Inc. v. Williams*, 264 Ga. 351, 354 (2) (444 SE2d 314) (1994); *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976); *Roswell Properties v. Salle*, 208 Ga. App. 202, 204 (3) (c) (430 SE2d 404) (1993); *Peterson v. P. C. Towers, L. P.*, 206 Ga. App. 591, 592 (2) (426 SE2d 243) (1992); *Daniels v. Johnson*, 191 Ga. App. 70 (1) (381 SE2d 87) (1989). " 'First, the injury caused by the breach must be difficult or impossible of accurate estimation.' " *Southeastern*, supra at 230. The affidavit of Mitchell Billing submitted on behalf of National describes the process of reviewing a doctor's application for employment. This process includes verifying license and certification information as well as conducting a background investigation and checking references. He asserts it would be impossible for the accounting department to maintain a system which would track the amount of time expended for each applicant. This assertion lacks a certain amount of credibility to those involved in the legal profession who are obliged to track the amount of time expended on behalf of one client or another on a regular basis. Nonetheless we are

---

[1] A third case also involving a doctor and National is referred to in the record of this case. An appeal was filed in that case, *Nat. Emergency Svcs. v. Sweat*, Case No. A93A1668, but it was withdrawn prior to opinion.

[2] Goetz & Scott, Liquidated Damages, Penalties, and the Just Compensation Principle: Some Notes on an Enforcement Code and a Theory of Efficient Breach, 77 Columbia L. Rev. 554 (1977); Comment, Refocusing Liquidated Damages Law for Real Estate Contracts: Returning to the Historical Roots of the Penalty Doctrine, 39 Emory L. J. 267 (1990).

willing to concede that keeping such records may be difficult.

The second prong of the tripartite test requires that the parties must intend to provide for damages rather than a penalty. *Southeastern*, supra. Wetherby's uncontradicted affidavit states he and National never discussed any figure which would represent National's damages in the event of a breach of the contract. The language of the contract itself, however, uses the phrase "liquidated damages" to describe the $25,000. We must first look to the language of the contract to determine whether the parties intended the provision in question to be a penalty or a legally cognizable liquidated damages clause. Here, we are unable to say as a matter of law that National cannot satisfy the second prong of the test. Nevertheless, for the reasons set out below, Wetherby is still entitled to summary judgment.

The sum stipulated as liquidated damages must be a reasonable pre-estimate of the probable loss. *Southeastern*, supra. Billing's affidavit describes the costs involved in the recruiting process, i.e., the company's costs involved in visiting and conducting interviews at residency programs, mass mailings, office rent and advertising, implying that some percentage of those costs can be attributed to the recruitment of each doctor. Without suggesting any precise dollar figure, Billing speculates that "a very substantial portion of the $10,000 (sic) which is set forth in the contract between plaintiff and defendant would have been spent in the verification process." He also asserts that National cannot predict the average cost of losing a doctor from its staff because they do not know how long the doctor would have stayed under contract with them, and consequently they cannot predict the amount of lost profits that would result. Lost profits are not generally recoverable as contract damages because of their speculative nature. The conclusory testimony in Billing's affidavit regarding the amount spent in the verification process is also speculative.

The issue of whether a provision constitutes liquidated damages rather than a penalty is an issue of law, *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989). For all of the reasons discussed above, we fail to see a connection properly established in the record in this case between the $25,000 sum and a competent estimation of probable loss. Although the result reached on this issue is contrary to that reached in *Dominy*, supra, our review of the evidence in this case leads us to the conclusion that the $25,000 provision in Wetherby's contract (two-and-one-half times larger than that in *Dominy*) must be construed as a penalty rather than liquidated damages and is unenforceable. The trial court's grant of summary judgment in favor of Wetherby with respect to that provision was proper.

*Judgment affirmed. Andrews, J., concurs. Beasley, C. J., concurs in judgment only.*

Decided March 15, 1995 —
Reconsideration denied March 29, 1995 — 

*Brown, Katz, Flatau & Hasty, S. Phillip Brown,* for appellant.
*Perry, Walters & Lippitt, S. B. Lippitt, Jr.,* for appellee.