A01A2026. ESI, INC. OF TENNESSEE v. WESTPOINT STEVENS, INC.

(562 SE2d 198)

MILLER, Judge.

WestPoint Stevens, Inc. hired ESI, Inc. of Tennessee, a general contractor, to install a new boiler facility at WestPoint's plant in North Carolina. ESI hired H & L Electrical as a subcontractor for the electrical work on the project. Believing that the power to the area in which they were working was shut off, two H & L employees suffered electrical burns while handling conduit and electrical wires. The employees sued H & L Electrical, WestPoint, and others for their injuries. WestPoint settled the suit and paid $500,000 to the H & L employees, and WestPoint's insurer, Travelers, paid the injured employees an additional $250,000. WestPoint then sued ESI under theories of contractual and common law indemnity. Both parties moved for summary judgment. The trial court denied ESI's motion and granted WestPoint's motion as to its claim for contractual indemnity. ESI appeals, challenging the trial court's ruling.

Summary judgment is proper when there is no genuine issue of material fact and when the undisputed facts, viewed most favorably to the nonmoving party, warrant judgment as a matter of law.[1]

The contract between ESI and WestPoint included a "Hold Harmless Agreement." This indemnity clause provided that:

> The Contractor shall be responsible from the time of signing the Contract, or from the time of the beginning of the first work, whichever shall be earlier, for all injuries or damage of any kind resulting from this work, to persons or property. The Contractor hereby assumes the obligation to save the Owner harmless and to indemnify the Owner from every expense, liability or payment arising out of or through injury

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see OCGA § 9-11-56 (c).

to any person or persons, including death, or damage to property of any person or the City or the State in which the work is located, suffered through: 1. Any act or omission of the Contractor or any Subcontractor, or anyone directly or indirectly employed by or under the supervision of any of them; or 2. Arising out of any act or omission incident to the inspection or supervision by the Owner or his representative(s) of the work included in this Contract.

The contract further required ESI to furnish to WestPoint "Workmen's Compensation Insurance" and "Comprehensive Liability Insurance covering all operations and automobiles: . . . 4. Including an endorsement incorporating the Hold Harmless Agreement assumed by the Contractor under the terms of this Contract."

1. In granting WestPoint's motion for summary judgment, the trial court found that OCGA § 13-8-2 (b)[2] did not void the indemnification provision since the contract required ESI to procure liability insurance for its own benefit. ESI argues that the indemnification clause is void and unenforceable and that recovery is allowed only where the indemnitor has agreed to obtain insurance *naming the indemnitee as an insured*. ESI further argues that in most construction contracts, the indemnitor procures liability insurance for itself, but that this should not suffice to sustain a cause of action on a void indemnity agreement.

ESI's argument is misplaced. As we held in *McAbee Constr. Co. v. Ga. Kraft Co.*,[3] where an insurance clause shifts the risk of loss to the insurance company, regardless of which party is at fault, an indemnification provision is not made void by OCGA § 13-8-2 (b).[4] In *McAbee Constr.*, this Court construed the indemnity provision together with the clause requiring insurance coverage for the indemnity provision and held that the provisions show that the parties intended coverage by insurance.[5] Therefore, OCGA § 13-8-2 (b) is inapplicable, and the court did not err in granting summary judgment to WestPoint on the issue of contractual indemnity. Moreover, we see no requirement that WestPoint be named as an insured in order to validate the indemnity provision as ESI argues.

---

[2] "A covenant, promise, agreement, or understanding . . . relative to the construction, alteration, repair, or maintenance of a building structure, . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable. . . ."

[3] 178 Ga. App. 496, 498 (343 SE2d 513) (1986).

[4] See *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980).

[5] *McAbee Constr.*, supra, 178 Ga. App. at 498.

2. In two enumerations, ESI argues that there were issues of fact as to common law indemnity. This issue, however, is moot in light of WestPoint's right to contractual indemnity as explained in Division 1.

3. ESI argues that WestPoint failed to create an issue of fact regarding the contributory negligence of the injured plaintiffs in the underlying case. More specifically, ESI contends that because the injured workers were contributorily negligent (a complete bar to recovery in North Carolina), WestPoint is therefore barred from recovering any amount from ESI.

ESI's argument is without merit, however, in light of the language of the hold harmless agreement. That provision requires ESI to indemnify WestPoint for all injuries suffered through any "act or omission of the Contractor or any Subcontractor, or anyone directly or indirectly employed by or under the supervision of any of them. . . ." This would include any failure on the part of the injured employees to use ordinary care for their own safety. Therefore, under the contract ESI was required to indemnify WestPoint regardless of whether the employees were contributorily negligent. Further, as explained in Division 1, the contract provided that coverage of ESI's indemnity obligation would be through insurance.

4. ESI argues that WestPoint had no right to claim the $250,000 paid by WestPoint's insurance company to the injured workers, as it was not the real party in interest. The trial court held that the fact that WestPoint's insurance company paid $250,000 was immaterial to WestPoint's right of recovery for contractual indemnity as Travelers would be a real party in interest only if WestPoint had assigned its claims to Travelers, which it did not do. The trial court was correct. Unless the insured assigns to the insurer any claims which it may have against third parties, the insured is the real party in interest and not the insurer.[6] As we see no evidence that WestPoint assigned its claim to Travelers, this argument is without merit.

5. ESI contends that the court erred in denying its expedited motion for reconsideration because there were factual issues concerning whether the settlement of the underlying case was reasonable in amount and entered into in good faith. This issue was raised for the first time in ESI's motion, and we can assume that the trial court denied this motion because the issue of the reasonableness of the settlement was not properly raised below. Inherent in a motion for reconsideration is a request to the court to reconsider an issue previously raised and/or ruled on. ESI, however, raised this argument for

---

[6] See *Bowen v. Waters*, 170 Ga. App. 65, 66 (316 SE2d 497) (1984); see also *Jones v. State Farm &c. Ins. Co.*, 228 Ga. App. 347, 349-350 (2) (491 SE2d 830) (1997).

the first time in the expedited motion for reconsideration, which is improper to preserve this issue for appeal.[7]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 22, 2002 —
RECONSIDERATION DENIED MARCH 20, 2002 — ▮▮▮▮▮▮

*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge*, for appellant.

*Magill & Atkinson, David M. Atkinson*, for appellee.

---

[7] See *Northgate Village Apts. v. Smith*, 207 Ga. App. 479, 480-481 (1) (428 SE2d 381) (1993); cf. *Crown Andersen, Inc. v. Ga. Gulf Corp.*, 251 Ga. App. 551, 553-554 (1) (b) (554 SE2d 518) (2001).