A03A2427. FEDERATED DEPARTMENT STORES et al.
v. SUPERIOR DRYWALL & ACOUSTICAL, INC.
(592 SE2d 485)

ELDRIDGE, Judge.

In plaintiff Judy Vandevender's trip and fall personal injury suit, the State Court of Bibb County granted summary judgment to third-party defendant Superior Drywall & Acoustical, Inc. ("Superior") and denied summary judgment to defendants/third-party plaintiffs Federated Department Stores d/b/a Rich's/Macy's of Macon ("Federated") and Orion Building Corporation ("Orion"). Federated and Orion appeal.[1] For the reasons that follow, we find no error in the trial court's judgments and affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

---

[1] Supplements to the record were received and considered by this Court.

law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

Viewed in such light, the evidence of record shows that Federated's Rich's department store in Macon underwent extensive renovation in 1999. Federated hired Orion as the contractor; Orion hired Superior to do the drywall work. The Rich's store remained open throughout the renovation. In order to facilitate ongoing construction and retail customers at the same time, a series of Sheetrock walls called "dust walls" were erected to block the construction areas from public access, as well as reduce dust and noise. The erection of dust walls is commonplace in the renovation of an open store. In this case, Superior erected the dust walls, enclosing approximately 20,000 to 30,000 square feet of store space; after renovation was completed in the enclosed area, the walls were removed, the renovated area was reopened for business, and the dust walls were reerected in the next designated construction area. Approximately 180,000 square feet of the Macon Rich's store was renovated in this fashion over approximately ten months. The record is that the dust walls were frequently erected adjacent to customer aisles.

For aesthetic reasons, Federated required that curtains cover the Sheetrock dust walls visible to its customers. As John Stone, Federated's project manager, deposed, "[J]ust as a decorative purpose to isolate the big white sheet rock from the public. It's not as ugly, we'll call it, as just the dust wall itself." Federated purchased the curtains and was responsible for directing their placement; the Rich's store management team had "the final say as to whether the curtains go up" and where. Stone testified that he did not know who physically hung the curtains; he just instructed that the curtains be hung and where.

Orion, as contractor, was responsible for ensuring that the curtains were hung in front of the dust walls as Federated directed. To that end, freestanding metal poles in metal bases were placed along the outside of the Sheetrock expanse to be covered; metal rods connected the tops of the poles, and floor-length curtains were suspended from the top of the connecting rods. The poles and their metal bases were hidden behind the curtains; however, approximately four inches of each metal base, one-quarter inch in height, stuck out from beneath the floor-length curtains.

With regard to hanging the curtains, Orion's construction super-

---

[2] OCGA § 9-11-56 (c).

[3] *Phillips v. First Bank of Ga.*, 257 Ga. App. 342 (571 SE2d 410) (2002).

intendent, Charles McCrary, testified that "Normally I did it myself, I didn't just get anybody to do it, I did it myself most usually if [Superior] didn't do it." He deposed that hanging the curtains in front of the Sheetrock was a "one man job"; that it is "real easy"; and that he did it by himself "all the time."

Superior's project supervisor testified that Superior was never asked to hang the curtains. He deposed that Superior was not involved with the curtains at all and that he "assume[d] Chuck [McCrary] did most or all of it himself." In that regard, other than Orion's McCrary, there is no evidence of record demonstrating that any specific person hung the curtains.

Plaintiff Vandevender filed her complaint against Federated and Orion, alleging she sustained serious injury as a result of tripping over the metal base of one of the poles used as the framework for suspending a floor-length curtain in front of a dust wall adjacent to a customer aisle in the Macon Rich's. Pursuant to a consent order sought by Federated and Orion, subcontractor Superior was joined as a third-party defendant based upon the terms of a contractual agreement between Orion and Superior ("Agreement"). Under the Agreement, Superior was responsible, inter alia, for performing,

> drywall work including installation of the temporary dust partitions (soft and hard including [Federated] furnished dust curtains) (the "Work").

Federated and Orion also relied upon an indemnification clause in the Agreement, which states,

> Subcontractor hereby assumes entire responsibility and liability for all damage or injury of any kind or nature (including death resulting therefrom) to all persons, whether employees of Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work, Except to the extent, if any, expressly prohibited by statute, should any claims for such damage or injury, including direct attorney's fees and any judgments or disbursements, that Orion, Owner [(Federated)], their officers, agents, and employees may directly or indirectly incur as a result thereof.

Also included in the Agreement is the requirement that Superior obtain contractor's general liability insurance. An uncontradicted, sworn affidavit from Superior's secretary/treasurer, who signed the Agreement on Superior's behalf, shows that Superior procured such insurance to cover its own liability with regard to potential claims made against Superior and that the insurance Superior purchased

did not cover claims made against Orion or Federated. In that regard, the Agreement further requires that,

> Builder's Risk Insurance will be provided by Owner or Orion as set forth in the Contract Documents. Subcontractor is responsible for deductible if Subcontractor causes the claim.

The uncontradicted evidence of record is that the "Builder's Risk Insurance" required by the Agreement provided liability coverage for Federated and Orion for any injuries allegedly occurring as a result of negligence on their part.

After being joined as a third-party defendant, Superior filed a motion for summary judgment premised upon Orion and Federated's sole liability for plaintiff's injuries; Orion and Federated likewise filed a motion for summary judgment premised upon Superior's sole liability for plaintiff's injuries. Without stating a factual or legal basis, the trial court granted Superior's motion and denied the motion as to Orion and Federated. *Held*:

1. In their first enumeration of error, Orion and Federated (hereinafter collectively "Federated") claim that the terms of the Agreement unambiguously provided for Superior to indemnify Federated for the alleged injuries sustained by the plaintiff. In making this claim, Federated candidly admits that the indemnification clause at issue appears to be against public policy per OCGA § 13-8-2 (b), which states in pertinent part,

> [An] . . . agreement . . . in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons . . . resulting from the sole negligence of the promisee . . . is against public policy and is void and unenforceable.[4]

Indeed, Federated by brief concedes that,

> Facially, and viewing the indemnity clause in the subject Contract in isolation, it would appear that this Section [(OCGA § 13-8-2 (b))] would apply. After all, the indemnity clause states that Superior must indemnify Orion and Federated for "all damage or injury of any kind . . . resulting from" or "arising out of" the Work. Injuries or damages that may arise out of the "sole negligence" of Orion or Federated

---

[4] OCGA § 13-8-2 (b).

that were included in the definition of the "Work" would be included in the blanket and general indemnity clause in the Contract.

While making such concession, however, Federated argues that the Indemnity Clause cannot be viewed in isolation and directs our attention to the Insurance Clause contained in the Agreement wherein Superior was required to obtain contractor's general liability insurance. Federated argues that an "insurance exception" to OCGA § 13-8-2 (b)'s public policy prohibition renders the instant Indemnity Clause enforceable under precedent established by this Court and the Supreme Court of Georgia; Federated claims that,

> The combination of a clause requiring insurance with an indemnity clause "clearly and unambiguously show[s] that the parties intended coverage by insurance, not ultimately indemnification of the 'indemnitee' . . . against its own negligence." *McAbee Construction Co. v. Georgia Kraft Co.*, 178 Ga. App. 496, 498, 343 SE2d 513, 515 (1986). See generally *Tuxedo Plumbing & Heating Co. v. Lie-Nielsen*, 245 Ga. 27, 262 SE2d 794 (1980) (seminal Supreme Court of Georgia case establishing exception discussed in this paragraph).

Federated urges this Court to find that the inclusion of the Insurance Clause plainly demonstrates the intention of the parties that the risk of loss be shifted to the insurance coverage obtained by Superior.

We concur with Federated that the Agreement must be viewed in toto in order to ascertain the true intent of the parties in this case.[5] We also agree that the cases cited by Federated permit the enforcement of an indemnity clause when the terms of the contract at issue unequivocally express the intent of the parties to shift the risk of loss and look solely to an insurance policy obtained in order to cover loss or damages incurred by *both* parties.[6] But our concurrence ends there. That a construction contract or agreement contains a requirement that insurance be purchased is not automatically a panacea for the dangers proscribed by the enactment of OCGA § 13-8-2 (b).[7]

---

[5] *Carlos v. Lane*, 275 Ga. 674, 675 (571 SE2d 736) (2002).

[6] *ESI, Inc. v. WestPoint Stevens*, 254 Ga. App. 332 (562 SE2d 198) (2002); *World Championship Wrestling v. City of Macon*, 229 Ga. App. 248 (493 SE2d 629) (1997); *Terrace Shopping Center Joint Venture v. Oxford Group*, 192 Ga. App. 346 (384 SE2d 679) (1989). See also *May Dept. Store v. Center Developers*, 266 Ga. 806 (1) (471 SE2d 194) (1996).

[7] The apparent purpose of OCGA § 13-8-2 (b) is to prevent a building contractor, subcontractor, or owner from contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied. Although the policy reasons behind OCGA § 13-8-2 (b) were not stated and no clear legislative history is available, it would

Instead, the type of insurance and the intent of the parties in mandating the purchase of insurance must play a part in the analysis.

In this case, Superior was required under the Agreement to purchase "contractor's general liability insurance." Absent any further description or direction, this type of insurance would cover Superior against its own negligent acts in the execution of the work.[8] Nothing in the Agreement indicates that such insurance would cover the negligent acts of Federated or in any way shows a mutual intent that it should do so. On the contrary, the Agreement specifically states that such insurance was to be obtained *"for* and in the name of Subcontractor." And the record shows that Superior procured such contractor's general liability insurance for its own protection.

Notably, and in that regard, the Agreement further required that Superior, "[b]efore commencing the Work," furnish a certificate "satisfactory to [Federated]" showing that Superior's insurance was in force. We infer from the record that such act occurred and that the purchased insurance was satisfactory to Federated, since Superior was permitted to "commenc[e] the Work." There has been no contention otherwise. As Superior purchased contractor's general liability insurance to cover only its own negligent acts and such insurance was "satisfactory" to Federated before the work commenced, it cannot now be credibly asserted that the intent of the parties was for such insurance to also cover the negligent acts of Federated.

Additionally, the Agreement specifically required Federated to purchase "Builder's Risk Insurance" — a detail Federated neglects to mention in their argument to this Court. While the builder's risk insurance policy obtained by Federated was not tendered and is not before us, there is uncontradicted evidence of record that such insurance provided liability coverage for Federated "for any injuries allegedly occurring on the premises that would be the result of negligence or fault of the owner [(Federated)]." In such instance where, under the terms of the Agreement, Federated was required to purchase its own liability insurance, it cannot be said that the Agreement unequivocally expresses the intent of the parties to shift the risk of loss and to look solely to Superior's insurance coverage for loss or damages incurred by either party.

As Federated conceded, absent an insurance clause demonstrat-

---

seem that construction contracts were singled out because of the possibility of hidden, or latent, defects of an extremely dangerous nature and not ordinarily detectable by a lay person.
(Citation and punctuation omitted.) *Borg-Warner Ins. Finance Corp. v. Executive Park Ventures,* 198 Ga. App. 70, 74 (400 SE2d 340) (1990) (Sognier, J., dissenting).

[8] See, e.g., *Sapp v. State Farm Fire &c. Co.,* 226 Ga. App. 200, 203-204 (486 SE2d 71) (1997); *City of Atlanta v. St. Paul Fire &c. Ins. Co.,* 231 Ga. App. 206, 209 (3) (498 SE2d 782) (1998).

ing the parties' mutual intent for Superior's insurance to supply coverage for loss or damages incurred by *both* parties, the Indemnity Clause in the instant Agreement is void and unenforceable pursuant to OCGA § 13-8-2 (b). The trial court did not err in granting Superior's motion for summary judgment on this issue and in denying Federated's like motion.

2. Our decision in Division 1, supra, renders moot Federated's remaining claims of error.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 18, 2003.

*Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese, Daniel S. Wright,* for appellants.

*John T. Mitchell, Jr.,* for appellee.