A07A0466. LANIER AT MCEVER, L.P. v. PLANNERS & ENGINEERS COLLABORATIVE, INC. et al.
(646 SE2d 505)

RUFFIN, Judge.

Lanier at McEver, L.P. ("Lanier"), the owner and developer of an apartment complex, brought suit against Planners & Engineers Collaborative, Inc. ("PEC"), a professional engineering firm, seeking damages allegedly resulting from the negligent design of the storm water drainage system for the complex. PEC filed a motion for partial summary judgment, contending that its damages were limited, pursuant to the terms of the parties' contract, to the amount of fees paid to PEC by Lanier for the project. The trial court granted PEC's motion, and Lanier appeals. For reasons that follow, we affirm.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence.[1] We view the evidence in a light most favorable to the nonmovant to determine whether a genuine issue of material fact exists and whether the

---

[1] See *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676 (634 SE2d 802) (2006).

moving party was entitled to judgment as a matter of law.[2] So viewed, the evidence shows that, pursuant to an agreement between the parties, PEC designed various elements of the Lanier complex, including the storm sewer and sanitary sewer drainage and management systems. The agreement contained the following provision:

> In recognition of the relative risks and benefits of the project both to [Lanier] and [PEC], the risks have been allocated such that [Lanier] agrees, to the fullest extent permitted by law, to limit the liability of [PEC] and its sub-consultants to [Lanier] and to all construction contractors and subcontractors on the project or any third parties for any and all claims, losses, costs, damages of any nature whatsoever[,] or claims [and/or] expenses from any cause or causes, including attorneys' fees and costs and expert witness fees and costs, so that *the total aggregate liability of PEC and its subconsultants to all those named shall not exceed PEC's total fee for services rendered on this project.* It is intended that this limitation apply to any and all liability or cause of action however alleged or arising, unless otherwise prohibited by law. At additional cost, [Lanier] may obtain a higher limit prior to commencement of services.

(Emphasis supplied.)

The apartment complex was completed in 2002 in accordance with PEC's designs and specifications. In January 2003, Lanier observed erosion, subsidence, and pavement settling and cracking on the property, and subsequently had the storm drainage system repaired and modified to increase its water capacity. Lanier sued PEC on May 20, 2005, seeking damages for the alleged negligent construction of the storm water drainage system, breach of express contractual warranty, and litigation expenses.[3] PEC denied liability for Lanier's damages in its answer and asserted counterclaims for attorney fees and unpaid professional fees.

Thereafter, PEC filed a motion for partial summary judgment, seeking to limit the damages Lanier could recover in the lawsuit to the amount of fees it paid PEC, pursuant to the parties' agreement.[4] The trial court concluded that the limitation of liability clause

---

[2] See id.

[3] Lanier also named Michael S. Twiner, PEC's president, as a defendant in the lawsuit. Twiner did not join in the partial summary judgment motion and, therefore, is not a party to this appeal.

[4] Lanier paid PEC $80,514 for services performed by PEC and its subconsultants. In its reply to the motion for partial summary judgment, Lanier stated that it had already spent more

contained in the agreement was enforceable and granted PEC's motion. The sole issue on appeal is whether the trial court erred in granting partial summary judgment to PEC. We discern no error.

1. Lanier contends that the damages limitation clause violates OCGA § 13-8-2 (a), which provides that "[a] contract which is against the [public] policy of the law cannot be enforced." According to Lanier, the clause is contrary to the public policy of the law "because it attempts to insulate a licensed professional engineer, whose work inherently and necessarily impacts upon public safety and welfare, from the full consequences of its failure to exercise reasonable care and skill in the performance of its practice." We disagree.

It is axiomatic that "unless prohibited by statute or public policy[,] the parties to a contract are free to contract on any terms and about any subject matter in which they have an interest."[5] A contract will not be declared void as against public policy "except where the case is free from doubt and an injury to the public interest clearly appears."[6] A contract does not contravene public policy unless the legislature "has declared it to be so, . . . consideration of the contract is contrary to good morals and contrary to law, or . . . the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law."[7] Here, we find no conflict between the damages limitation clause and the public policy of this state.

Lanier relies primarily upon *Emory Univ. v. Porubiansky*,[8] in which our Supreme Court concluded that an exculpatory clause contained in a contract for services between a patient and a dental clinic was void as against public policy. Dentists, as medical practitioners regulated by the state, are statutorily required to exercise reasonable care and skill.[9] As the Court explained, the exculpatory clause would contravene the public policy of maintaining safety and health, as set forth in the statute, by essentially relieving a dentist of the obligation to exercise reasonable care.[10]

Lanier's reliance on *Porubiansky* is misplaced. The patient in that case executed a full release, expressly waiving " 'any and all claims of every nature' " she might have had against the dental

---

than $250,000 to repair the drainage system and anticipated expending additional sums, possibly bringing the total damage amount to over $500,000.

[5] (Punctuation omitted.) *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*, 197 Ga. App. 141 (397 SE2d 611) (1990).

[6] *Hartford Ins. Co. &c. v. Franklin*, 206 Ga. App. 193, 195 (2) (424 SE2d 803) (1992).

[7] (Punctuation omitted.) Id.

[8] 248 Ga. 391, 393-395 (282 SE2d 903) (1981).

[9] See OCGA § 51-1-27.

[10] See *Porubiansky*, supra.

clinic.[11] In the instant case, however, the provision at issue did not release PEC from liability for Lanier's claims. Instead, it simply limited Lanier's damages to the amount of fees paid under the contract. Accordingly, the Supreme Court's holding in *Porubiansky* is inapplicable and does not mandate reversal.

Lanier further argues that "allowing professional engineers to limit their liability to the amount of their fee is contrary to sound public policy because it would remove an incentive to exercise care in practicing their profession." This argument is without merit. The damages limitation clause at issue merely limits the *amount* of damages the engineer might owe to *Lanier*. It does not, however, preclude recovery against PEC by a third party for personal injuries resulting from PEC's design or construction.[12]

2. Lanier also argues that the damages limitation clause violates OCGA § 13-8-2 (b), which provides in relevant part that

> [an] . . . agreement relative to the construction, alteration, repair, or maintenance of a building structure . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable.

As set forth in Division 1, the damages limitation clause in the instant case does not exculpate PEC from any wrongful conduct or release them from liability. Instead, it merely limits the amount of damages Lanier may recover from PEC. Thus, the clause does not violate OCGA § 13-8-2 (b).[13]

3. Finally, Lanier argues that the limitation of liability clause in the parties' contract constitutes a liquidated damages penalty prohibited by Georgia law. This contention is also without merit. Under OCGA § 13-6-7, "[i]f the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." A liquidated damages provision is unenforceable unless: (1) the injury is difficult or impossible to estimate; (2) the

---

[11] Id. at 392.

[12] See *Samuelson v. Lord, Aeck & Sergeant, Inc.*, 205 Ga. App. 568, 572 (2) (a) (423 SE2d 268) (1992) ("Independently of the contract to design a building or premises, an . . . engineer owes a general duty to use reasonable care not to harm third persons who, it is reasonably foreseeable, might be harmed by a negligent architectural design.").

[13] See *Brainard v. McKinney*, 220 Ga. App. 329 (1) (469 SE2d 441) (1996) (physical precedent only) (an exculpatory clause that is not an indemnification or hold harmless provision is not prohibited by OCGA § 13-8-2 (b)); *Piedmont Arbors Condo. Assn.*, supra.

parties intend to provide for damages rather than a penalty; and (3) the liquidated damages sum is a reasonable estimate of the probable loss.[14] But here, the parties did not agree to a fixed measure of damages. Instead, they agreed to a *limit* on the amount of damages Lanier could recover from PEC. Though they will be capped, the amount of damages, if any, will have to be determined by a trier of fact. Thus, the contract term is not an unenforceable penalty and Lanier's argument on this basis fails.[15]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 16, 2007 — 

*James C. Morton*, for appellant.
*Greenfield, Bost & Kliros, Michael W. Lord*, for appellees.

---

[14] See *Nat. Emergency Svcs. v. Wetherby*, 217 Ga. App. 42, 43-44 (456 SE2d 639) (1995).

[15] See *Colonial Bank v. Boulder Bankcard Processing*, 254 Ga. App. 686, 692 (7) (563 SE2d 492) (2002) ("Damages are liquidated when they are 'an amount certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing.' ").