S07G1424. LANIER AT McEVER, L.P. v. PLANNERS AND
ENGINEERS COLLABORATIVE, INC.
(663 SE2d 240)

BENHAM, Justice.

In June 2001, Lanier at McEver, L.P. ("Lanier"), a large construction developer, retained Planners and Engineers Collaborative, Inc. ("PEC"), a civil engineering firm, to design a storm-water drainage system for a 220-unit apartment complex Lanier was constructing. In the contract for services, Lanier and PEC agreed to the following clause:

In recognition of the relative risks and benefits of the project both to [Lanier] and [PEC], the risks have been allocated such that [Lanier] agrees, to the fullest extent permitted by law, to limit the liability of [PEC] and its sub-consultants to [Lanier] and to all construction contractors and subcontractors on the project or any third parties for any and all claims, losses, costs, damages of any nature whatsoever[,] or claims expenses from any cause or causes, including attorneys' fees and costs and expert witness fees and costs, so that the total aggregate liability of PEC and its subconsultants to all those named shall not exceed PEC's total fee for services rendered on this project. It is intended that this limitation apply to any and all liability or cause of action however alleged or arising, unless otherwise prohibited by law.

After the apartment building was completed, Lanier discovered erosion and other physical damage which an expert attributed to PEC's negligent design of the storm-water drainage system. Lanier has spent $250,000 in repairs to the system thus far and expects to spend a total of $500,000 by the time repairs are complete. To recoup its damages, Lanier sued PEC for negligent construction of the drainage system, breach of contractual warranty and litigation expenses. In response, PEC filed a motion for partial summary judgment, seeking to invoke the parties' agreement and limit its liability for any damages owed to Lanier to $80,514, which was PEC's total fee for services. The trial court granted PEC's motion for partial summary judgment and the Court of Appeals affirmed. *Lanier at McEver, L.P. v. Planners & Engineers Collaborative*, 285 Ga. App. 411 (646 SE2d 505) (2007). We granted Lanier's petition for certiorari to determine whether the limitation of liability clause in the parties' construction contract violates Georgia's public policy. Because the clause violates Georgia's public policy as set forth in OCGA § 13-8-2 (b), we reverse.

1. "As a general rule a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, . . . except when such an agreement is prohibited by statute. . . ." *Smith v. Seaboard Coast Line R. Co.*, 639 F2d 1235, 1239 (5th Cir. 1981). At the time the parties entered into their contract in June 2001, OCGA § 13-8-2 (b) provided as follows:

A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appli-

ances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

The purpose of OCGA § 13-8-2 (b) "is to prevent a building contractor, subcontractor, or owner from contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied." *Smith v. Seaboard Coast Line R. Co.*, 639 F2d at 1242. Under the statute, a provision in an agreement whereby a building contractor purports to waive liability for property damages allegedly resulting from the sole negligence of the contractor's agents or employees is void and unenforceable. *Borg-Warner Ins. Finance Corp. v. Executive Park Ventures*, 198 Ga. App. 70, 71 (400 SE2d 340) (1990).

2. Georgia law defines indemnity as "the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit." (Citation and punctuation omitted.) *Holmes v. Clear Channel Outdoor*, 284 Ga. App. 474, 477 (644 SE2d 311) (2007).[1] Although the clause at issue in this case does not exculpate PEC from all monetary liability, it is an indemnity as defined above and as prohibited by OCGA § 13-8-2 (b), particularly regarding claims for which PEC may be solely negligent for injuries to third parties (i.e., members of the public who are not

---

[1] See also *Parker v. Puckett*, 129 Ga. App. 265 (199 SE2d 343) (1973), in which the Court of Appeals stated:

An indemnity contract is defined by Black's Dictionary of Law as "[a]n agreement between two parties, whereby the one party, the indemnitor, either agrees to indemnify and save harmless the other party, the indemnitee, from loss or damage, or binds himself to do some particular act or thing, or to protect the indemnitee against liability to, or the claim of, a third party." [Cit.] "Indemnity" means "reimbursement, restitution, or compensation." [Cit.] "In a contract of indemnity the indemnitor, for a consideration, promises to indemnify and save harmless the indemnitee against liability of the indemnitee to a third person, or against loss resulting from such liability. The contract of the indemnitor is an original undertaking." [Cit.] As stated in the written opinion of the trial court, "[a]n indemnity contract differs from a guaranty in that the former is an original rather than a collateral undertaking and generally undertakes to make good the promisee's loss resulting from his liability to another rather than from another's liability to him." [Cit.]

agents or construction subcontractors of Lanier or PEC). This is because the clause applies to "any and all claims" by third parties and shifts all liability above the fee for services to Lanier no matter the origin of the claim or who is at fault. Thus, while a third party is not precluded from suing PEC for any negligent actions in constructing the storm-water drainage system, the clause at issue here allows PEC to recover any judgment amount entered against it from Lanier once the $80,514 threshold has been surpassed, including judgment amounts on third-party claims for which PEC is solely negligent.

In this case, the $80,514 threshold has already been met insofar as Lanier has expended a quarter of a million dollars to repair the drainage system. As a result, PEC will be able to recover from Lanier losses for all future third-party claims. This complete avoidance of liability to third parties for sole negligence in a building contract is exactly what OCGA § 13-8-2 (b) prohibits. See *Smith v. Seaboard Coast Line R. Co.*, 639 F2d at 1242; *Federated Dept. Stores v. Superior Drywall & Acoustical*, 264 Ga. App. 857 (1) (592 SE2d 485) (2003) (OCGA § 13-8-2 (b) is violated by a clause which required subcontractor to be liable to store owner for "all damage or injury of any kind or nature" where there was no provision for insurance covering the sole negligence of both parties). See also *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*, 197 Ga. App. 141 (397 SE2d 611) (1990) (contract clause did not violate OCGA § 13-8-2 (b) where it prohibited homeowners' association from suing construction company for structural defects, but did not preclude individual homeowner from making such claims). Nothing in OCGA § 13-8-2 (b) permits a construction party to shift its third-party liability for its sole negligence to another contractor, no matter how savvy the parties or how high the damages cap.[2]

Nevertheless, PEC points to cases from other jurisdictions to support the argument that this clause does not violate public policy; however, decisions from other jurisdictions that uphold the enforcement of certain limitation of liability clauses may be distinguished from the clause in this case. For example, in *Valhal Corp. v. Sullivan Assoc.*, 44 F3d 195 (3rd Cir. 1995), the developer agreed the architect's liability to the developer and its project contractors/subcontractors for negligent acts would be limited to $50,000 or the total

---

[2] Parties may avoid violating OCGA § 13-8-2 (b) if their agreement also includes an insurance clause which shifts the risk of loss to an insurer, no matter who is at fault. *ESI, Inc. of Tennessee v. Westpoint Stevens, Inc.*, 254 Ga. App. 332 (1) (562 SE2d 198) (2002) (no violation of OCGA § 13-8-2 (b) where insurance clause encompassed indemnity clause); *Glazer v. Crescent Wallcoverings, Inc.*, 215 Ga. App. 492 (1) (451 SE2d 509) (1994) (where landlord and tenant contract showed intent to shift liability for fire to insurer, there was no violation of OCGA § 13-8-2 (b)). There is no allegation that such an insurance clause exists in this case.

fee for services,[3] but did not agree that it would limit the liability of the architect regarding "any third parties for any and all claims" or that the limitation would "apply to any and all liability or cause of action however alleged or arising."[4] These two phrases, which appear in the clause at issue, shift PEC's liability for third-party negligence claims, which could be brought by any member of the public, to Lanier who would be required to reimburse appellee for all third-party damages owed by PEC above the negotiated damages cap, including damages for which PEC is solely negligent.[5] This phrasing in the parties' clause violates the intent of OCGA § 13-8-2 (b) because it acts as an indemnity or "hold harmless" clause even if such words do not appear in the parties' agreement.[6] *Federated Dept. Stores*, supra, 264 Ga. App. at 859-860 (clause where subcontractor assumed liability for "all damage or injury of any kind or nature . . . to all persons" was void under OCGA § 13-8-2 (b)). See also *Frazer v. City of Albany*, 245 Ga. 399, 401-402 (265 SE2d 581) (1980) (construction contract clause which sought to indemnify party from "all claims" and to hold harmless against "any loss" was void); *Nat. Candy Wholesalers v. Chipurnoi, Inc.*, 180 Ga. App. 664 (350 SE2d 303) (1986) (clause that sought to indemnify party for "any claim" included claims for which the party was solely negligent and, therefore, was void under OCGA § 13-8-2 (b)); *Hartline-Thomas, Inc. v. Arthur Pew Constr. Co.*, 151 Ga. App. 598 (260 SE2d 744) (1979) (contract clause that sought to indemnify contractor for its own negligence was void as against public policy). Therefore, we hold this clause to be void under OCGA § 13-8-2 (b).

---

[3] The clause in *Valhal* read fully as follows:
The OWNER agrees to limit the Design Professional's liability to the OWNER and to all construction Contractors and Subcontractors on the project, due to the Design Professional's professional negligent acts, errors or omissions, such that the total aggregate liability of each Design Professional shall not exceed $50,000 or the Design Professional's total fee for services rendered on this project.

[4] Like *Valhal*, supra, the clauses in *1800 Ocotillo, LLC v. WLB Group, Inc.*, 217 Ariz. 465 (176 P3d 33) (2008), and *Fort Knox Self Storage v. Western Technologies*, 140 N.M. 233 (142 P3d 1) (2006) restrict the limitation of liability to claims arising solely between the contracting parties and/or their agents (i.e., employees, building contractors and subcontractors) and are devoid of any reference to liability for third-party claims brought by the general public.

[5] The limitation of liability clause in *Valhal* did not allow the architect to be reimbursed by the developer for third-party negligence claims of the general public for which the architect was solely liable. The limitation of liability clauses in *1800 Ocotillo, LLC v. WLB Group, Inc.*, supra, 217 Ariz. 465 and *Fort Knox Self Storage v. Western Technologies*, supra, 140 N.M. 233, also do not allow for such reimbursement.

[6] We reject the notion that the clause agreed upon by Lanier and PEC is a "limitation of liability clause," simply capping damages. Because this clause allows shifting liability for third-party claims from one contractor to another, it is an indemnity. *Holmes v. Clear Channel Outdoor*, supra, 284 Ga. App. at 477.

3. Assuming without deciding that this case is analogous to *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981) insofar as it involves professional engineers who are statutorily charged with maintaining the safety and welfare of the public,[7] we need not address this clause's viability under OCGA § 13-8-2 (a)[8] because the clause violates Georgia's public policy under OCGA § 13-8-2 (b).

*Judgment reversed. All the Justices concur, except Hines and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

The majority opinion correctly states that, as a matter of law, "[the] complete avoidance of liability to third parties for sole negligence in a building contract is exactly what OCGA § 13-8-2 (b) prohibits." The majority also concludes that, as a matter of fact, "the clause at issue in this case does not exculpate PEC from all monetary liability." This finding of law and finding of fact should compel the conclusion that the clause in issue, which does not allow the complete avoidance of liability, is not a clause prohibited by OCGA § 13-8-2 (b). The majority, however, by relying on inapplicable case law and by prejudging PEC's negligence before any trial has occurred, reaches the opposite conclusion. I must, therefore, respectfully dissent.

1. OCGA § 13-8-2 (b) governs indemnification and "hold harmless" clauses which, by definition, hold a contractor harmless from liability resulting from its sole negligence.[9] A hold harmless clause is

---

[7] Professional engineers are regulated at OCGA § 43-15-1 et seq. The very first provision of that code section states, "[t]his chapter is enacted to safeguard life, health, and property and to promote the public welfare." OCGA § 43-15-1. With that purpose in mind, the legislature saw fit to require "professional engineers" to meet a host of requirements, including having at least a four-year degree in an accredited engineering curriculum, acquiring a certain number of years of engineering experience, and passing a written examination. OCGA §§ 43-15-8 and 43-15-9. Only engineers certified by the Georgia Board of Professional Engineers and Land Surveyors may engage in the practice of "professional engineering" (OCGA § 43-15-18), and they must adhere to rules of professional conduct promulgated by the Board, including practicing in "a manner as to protect the safety, health and welfare of the public." Thus, professional engineers are very much like physicians and attorneys in the degree they are regulated by the state in order to protect the public welfare. See OCGA § 43-34-3 et seq. (regulating physicians) and OCGA § 15-19-1 et seq. (regulating attorneys). See also *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565 (675 A2d 209) (1996) (engineers cannot be held harmless or indemnified per se for their sole negligence).

[8] OCGA § 13-8-2 (a) states in pertinent part: "A contract which is against the policy of the law cannot be enforced."

[9] This opinion addresses only the version of OCGA § 13-8-2 (b) applicable to these parties at the time they entered into the contract in question. This version of the statute provides that the parties to a construction contract may not enter into agreements "purporting to indemnify or hold harmless" one of the parties. Ga. L. 1990, p. 1676, § 1. Effective July 1, 2007, however, OCGA § 13-8-2 (b) has been revised to encompass construction contracts "purporting to

an "[a]greement or contract in which one party agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved." Black's Law Dictionary 731 (6th ed. 1990). The clause in question here does not hold PEC harmless or without responsibility, it merely limits PEC's liability to pay damages. Irrespective of the contract between Lanier and PEC, PEC remains fully responsible and liable to third parties foreseeably injured by any negligent act committed by PEC. *Samuelson v. Lord, Aeck & Sergeant, Inc.*, 205 Ga. App. 568, 572 (2) (a) (423 SE2d 268) (1992) ("Independently of the contract to design a building or premises, an architect or engineer owes a general duty to use reasonable care not to harm third persons who, it is reasonably foreseeable, might be harmed by a negligent architectural design."). Such an injured third party could bring suit against PEC, and PEC would be liable to pay the extent of any damages awarded to that third party. If that payment, however, exceeded the amount of PEC's fees, it might then seek to enforce its contract with Lanier. This is the nature of a limitation of liability clause. *Valhal Corp. v. Sullivan Assoc.*, 44 F3d 195, 202 (II) (B) (3rd Cir. 1995). An indemnity or hold harmless clause, on the other hand, would require Lanier to wholly absolve PEC of responsibility for its actions, necessitating that Lanier would have to defend any claim against PEC as the party to whom any third party would look for recourse. That simply is not the case here. PEC remains liable for its negligence, despite the fact that its damages have been capped. As a result, OCGA § 13-8-2 (b) is not applicable. See *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*, 197 Ga. App. 141 (397 SE2d 611) (1990). Other states with similar statutes have reached this same result. See, e.g., *1800 Ocotillo, LLC v. The WLB Group, Inc.*, 217 Ariz. 465 (176 P3d 33) (2008); *Fort Knox Self Storage v. Western Technologies*, 140 N.M. 233 (142 P3d 1) (2006); *Valhal Corp. v. Sullivan Assoc.*, supra.

As the Court in *Valhal Corp.*, supra at 202 (B) (1) explained:

The law recognizes different methods by which a party can limit his/her exposure to damages resulting from his/her negligent performance of a contractual obligation. An exculpatory clause immunizes a person from the consequences of his/her negligence. Similarly, an indemnity clause holds the indemnitee harmless from liability by requiring the indemnitor to bear the cost of any damages

---

require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract." Ga. L. 2007, p. 208, § 1. The 2007 version of the statute is not applicable to these parties, and, as such, I do not consider any effect it may have upon construction contracts such as the one now in question before this Court.

from which the indemnitee is held liable. The instant clause has no such consequence. The clause before us does not bar any cause of action, nor does it require someone other than [PEC] to ultimately pay for any loss caused by [PEC's] negligence. [PEC] remains liable for its own negligence and continues to be exposed to liability up to a . . . ceiling. Thus, the amount of liability is capped, but [PEC] still bears substantial responsibility for its actions.

(Citations and footnote omitted.)

To reach its conclusion, the majority both prognosticates the result of a future trial in this case and relies on case law which fails to support its conclusion. In order to find that the contract clause in question could not possibly expose PEC to any liability from third parties, the majority states: "In this case, the $80,514 threshold has already been met insofar as Lanier has expended a quarter of a million dollars to repair the drainage system. As a result, PEC will be able to recover from Lanier losses for all future third-party claims." This statement relies on a series of facts never proven: (1) that PEC has been negligent in some way; (2) that, due to this negligence, PEC is liable to Lanier for damages; and (3) that PEC's liability to Lanier for damages is at least the full amount of its fees ($80,514). There has been no trial in this case, only a grant of partial summary judgment to PEC finding that "[Lanier's] damages, *if any*, are limited to a maximum of $80,514.00." (Emphasis supplied.) As a result, the majority errs both by prejudging PEC's negligence to be in excess of its fees and by basing its analysis on this premature judgment.

With regard to the case law cited by the majority, none of those cases supports the majority's ultimate conclusion. Each and every case deals with a situation in which one party wholly indemnifies and holds harmless the other party. *Smith v. Seaboard Coast Line R. Co.*, 639 F2d 1235 (5th Cir. 1981) (railroad indemnified and held harmless for all liability and damages); *Frazer v. City of Albany*, 245 Ga. 399 (265 SE2d 581) (1980) (agreement to indemnify and hold harmless from any and all losses); *Hartline-Thomas, Inc. v. Arthur Pew Constr. Co.*, 151 Ga. App. 598 (260 SE2d 744) (1979); *Borg-Warner Ins. Finance Corp. v. Executive Park Ventures*, 198 Ga. App. 70 (400 SE2d 340) (1990) (agreement holding parties harmless from any and all liability and damages); *Federated Dept. Stores v. Superior Drywall & Acoustical*, 264 Ga. App. 857 (592 SE2d 485) (2003) (agreement indemnifying and holding party harmless from entire responsibility and liability). None of the cases involves a situation like the one at hand, where liability has been capped. Instead of supporting the majority opinion, they make it clear that OCGA § 13-8-2 (b) governs

clauses which purport to wholly indemnify or hold harmless a party. Again, no such clause is involved here.

*Smith v. Seaboard Coast Line R. Co.*, supra, actually supports the conclusion in this dissent. In *Smith*, the district court determined that OCGA § 13-8-2 (b) was not applicable to a lease agreement (as opposed to a construction contract) in which a railroad lessor was held harmless for any damages it might cause to a shed on the leased property resulting from the railroad's sole negligence. In making this determination, the district court observed:

> [A]s a general rule, a party can protect himself by contract from liability for the consequences of his own negligent acts. As to contracts relating to the construction or maintenance of buildings, however, this statute changes this common law rule and, thus, should be strictly construed.

Strictly construed, OCGA § 13-8-2 (b) applies expressly to "hold harmless" clauses. It does not apply to limitation of liability clauses.

In reaching the opposite result, the majority overlooks the differences between indemnity and hold harmless provisions on the one hand and limitation of liability clauses on the other hand. Those very real differences

> preclude [the majority's] assumption that a statute expressing a prohibition against indemnity and hold harmless provisions [such as OCGA § 13-8-2 (b)] announces a public policy against something as distinct and accepted as limitation of liability clauses. Indeed, . . . such an assumption has the practical effect of amending this statute.

*Valhal Corp.*, supra, 44 F3d at 205 (2). Without inherent authority or authorizing precedent, the majority so amends OCGA § 13-8-2 (b) today.

Nonetheless, in some cases, damages may be capped at such a nominal level that a party may, in effect, be immunized from almost all liability for its negligent acts. In this instance, the clause in question might violate OCGA § 13-8-2 (b) as an improper indemnity clause. In this case, however, the cap on damages, namely the entire fee earned by PEC, is not so nominal as to comprise an indemnity clause. To the contrary, the loss of all fees to an engineer is significant for several reasons: (1) it would result in working for free on a project despite the expenditure of time, energy, and other resources; (2) the engineer may have foregone other income producing projects in order to complete the project in question; and (3) the engineer might not only lose fees but also be subject to professional

censure by the appropriate review board. Therefore, under these circumstances, PEC's limitation of liability to the full extent of its fees is "not so drastic as to remove the incentive to perform with due care." *Valhal Corp.*, supra, 44 F3d at 204. The majority's analysis, on the other hand, would seem to operate as a blanket prohibition precluding any limitation of liability between the parties whatsoever.

2. The contract clause in question in this case is also in compliance with the public policy underlying OCGA § 13-8-2 (a). That statute provides: "A contract which is against the policy of the law cannot be enforced." "[T]he delicate and undefined power of courts to declare a contract void as contravening public policy[, however,] should be exercised with great caution, and only in cases free from substantial doubt." (Citation omitted.) *Foster v. Allen*, 201 Ga. 348, 349 (40 SE2d 57) (1946).

> A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.

*Camp v. Aetna Ins. Co.*, 170 Ga. 46, 50-51 (152 SE 41) (1930).

Although professional engineering is a licensed profession controlled by the State and in which the State holds a strong interest,[10] the contractual limitation of liability at issue in this case does not violate public policy for several reasons. First and foremost, the contract does not actually relieve PEC from acting with the appropriate standard of care for professional engineers. The contract states:

> PEC shall perform services for [Lanier] in a professional manner, using the degree of care and skill ordinarily exercised by and consistent with the standard of competent consultants practicing in the same or similar locality of the site. This warranty is in lieu of all other warranties, either express or implied.

Therefore, even with regard to Lanier, PEC is required to act with the requisite standard of care imposed by law upon all professional engineers. Second, the contract neither eliminates nor reduces PEC's exposure to claims by members of the general public. Irrespective of any limitations in its contract with Lanier, PEC's duty of

---

[10] See OCGA § 43-15-1 et seq.

reasonable care towards third parties who might foreseeably be harmed by its design, if negligent, remains viable and actionable if breached. See, e.g., *Samuelson,* supra. Therefore, even though PEC's exposure to damages may ultimately be capped, PEC still has a substantial incentive to act with the appropriate standard of care to avoid potential exposure to members of the public other than Lanier.[11] Third, both parties to this contract, one a professional construction firm and the other a professional engineering firm, were sophisticated business associations with extensive experience and knowledge about the services which were the subject of the agreement. As a result, the contract in question is the result of informed bargaining by savvy parties of equal footing. Finally, the contract in question was not a standardized adhesion contract in either the terms it contained or in the way that it was negotiated between the parties. The agreement was voluntarily entered into without being forced upon either party in any way. For all of these reasons, it cannot be said, clear from all doubt, that the contract clause in question violates public policy, and this situation is not one in which this Court should exercise the delicate and undefined power to declare otherwise. See, e.g., *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363 (203 SE2d 587) (1973); *Piedmont Arbors,* supra. See also *Valhal Corp.,* supra.

Although Lanier contends that this matter is controlled by *Emory Univ. v. Porubiansky,* 248 Ga. 391 (282 SE2d 903) (1981), that case is distinguishable. *Porubiansky* dealt with an agreement containing an exculpatory clause in which a patient completely waived her rights to bring a malpractice action against the dentist who treated her. Unlike this matter, *Porubiansky* presented a situation involving the healing arts in which the parties were of unequal footing and all liability had been waived. That simply is not the case here. To the contrary, this matter concerns only a limitation of liability agreed upon by savvy businessmen of comparable bargaining power.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED JUNE 30, 2008 —
RECONSIDERATION DENIED JULY 25, 2008.

*James C. Morton,* for appellant.

---

[11] Moreover, PEC retains an incentive to act with the appropriate standard of care in order to avoid possible sanctions imposed by the State Board of Registration for Professional Engineers and Land Surveyors. See OCGA §§ 43-15-6 through 43-15-19.

*Greenfield, Bost & Kliros, William L. Bost III, Michael W. Lord,* for appellees.

*Shapiro, Fussell, Wedge & Smotherman, H. Fielder Martin, Stephen L. Wright, Freeman, Mathis & Gary, T. Bart Gary, Katie W. Barber, Webb, Tanner, Powell, Mertz & Wilson, Anthony O. L. Powell, Bondurant, Mixson & Elmore, H. Lamar Mixson, Lisa R. Strauss, Deborah J. LaFetra, Elizabeth A. Yi,* amici curiae.